Dennis W. LANCE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Aug. 20, 1991.
Decided: Nov. 18, 1991.

Bernard J. O'Donnell, Asst. Public Defender, Office of the Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Dennis W. Lance ("Lance"), was indicted on May 10, 1989 for Murder in the Second Degree. 11 *Del.* C. § 635. Lance was charged with the beating death of Michael Priebe, age twenty-eight months, which occurred March 31, 1989. Following a jury trial in the Superior Court, Lance was convicted, as charged, on March 13, 1990. He was sentenced on June 7, 1990.[1] Lance filed this direct appeal on July 3, 1990.

In this appeal, Lance argues that the Superior Court erred in denying his attorney's request, during trial, to compel the production of a State witness' prior statement to the police. According to Lance, the State was required to produce such a prior statement, contained in recorded or substantially verbatim form, before Lance's trial attorney began his cross-examination of that witness. *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The *Jencks'* rule was adopted by this Court in *Hooks v. State*, Del.Supr., 416 A.2d 189 (1980).

---

1. Lance was sentenced to twenty years of imprisonment, to be suspended after twelve years for a period of probation at Level III and thereafter for probation at Level II.

The State argues, *inter alia*, that Delaware's adoption of the *Jencks'* rule was modified by the enactment of the Delaware Rule of Evidence 612(b). According to the State, it is now only required to produce a witness' pretrial statement to the police, for a defense attorney before cross-examination begins, if the State's witness used the statement to refresh his or her recollection prior to testifying. See D.R.E. 612(b). Alternatively, the State argues that, if the Superior Court erred in denying Lance's request to compel production of the witness' prior statement, that error was harmless.[2]

We have reviewed each of the party's contentions. We have concluded that the *Jencks* rule, as adopted by this Court in *Hooks,* was not modified by the enactment of Delaware Rule of Evidence 612(b). Accordingly, we find that the Superior Court erred in refusing to compel the State to produce its witness' prior statement at trial, before the cross-examination of that witness began by Lance's trial attorney. As a result of the summary nature of the Superior Court's ruling, the prior statement was never examined by the Superior Court and was not made a part of the record. Consequently, this Court is unable to determine any harm that the Superior Court's erroneous decision may have caused to Lance's defense.

Therefore, this matter will be remanded to the Superior Court for further proceedings. Jurisdiction will be retained. On remand, the Superior Court should examine the witness' pretrial statement and determine the degree of prejudice, if any, which the unavailability of that statement may have caused to the fundamental fairness of Lance's trial.

### Facts

On March 31, 1989, at about 10:00 P.M., Lance knocked on the door of his neighbor, Ann Cline ("Cline"). Lance told Cline that the "little boy" had fallen down the stairs and he thought the boy was still breathing, but was not sure. Cline assumed that the "little boy" was Michael Priebe ("Michael"), a twenty-eight month old child. Lance shared a home next door to Cline with Michael's mother, Jennifer Priebe.[3]

Cline accompanied Lance to the home next door. According to Cline, upon entering the home she observed Michael lying on the living room sofa. His head was propped up on a pillow. His color was grayish-blue. Cline's initial reaction was "he's dead." Lance replied, "No, he's not dead."

Lance then pressed Michael's chest and a gurgling sound was heard. Cline told Lance to dial "911" for emergency help. Cline immediately attempted to revive Michael through mouth-to-mouth resuscitation. Although she was untrained in cardiopulmonary resuscitation ("CPR"), Cline testified she did what she had seen on television.

After Lance made telephone contact with emergency personnel, he told Cline to bring Michael closer to the telephone. Cline testified that when she moved Michael, his body was limp. Cline placed Michael on the floor near the telephone. Together Cline and Lance attempted to perform CPR under the direction of an emergency technician over the telephone. Lance performed mouth-to-mouth resuscitation and Cline performed chest compressions. While Lance and Cline were performing these procedures, Jennifer Priebe arrived at the house accompanied by one of her other children.

State Trooper Debra Wooters ("Trooper Wooters") also arrived at the scene within

---

**2.** The State also suggests that Lance failed to create a proper record for review by neglecting to show on the record that the witness statement in question was discoverable under the *Jencks* rule. Notwithstanding that suggestion, the State assumed at trial, and acknowledges in this appeal, that Cline's statement was recorded in a form contemplated by Delaware's initial adoption of the rule in *Jencks.*

**3.** Lance and Jennifer Priebe lived in the house together with their daughter and Jennifer Priebe's three other children (including Michael) from a previous marriage. On the night in question, Michael and his younger half-sister were alone in the house with Lance.

a matter of minutes. She relieved Lance and Cline of their attempts at resuscitation. Trooper Wooters testified that, as she was performing CPR, she noticed a number of bruises and abrasions on Michael's head, arms, and legs. She also testified that she noticed a large donut-shaped bruise on Michael's abdomen. Trooper Wooters continued to administer CPR on Michael in an ambulance until they reached the hospital. There, she was relieved by an emergency room physician. Michael was pronounced dead shortly after his arrival at the hospital.

Lance and Cline both made statements that evening to police officers who were investigating Michael's death. At trial several of the State's witnesses were the officers who had interviewed Lance on the night of Michael's death. The statements that Lance gave to each of them were introduced into evidence.

Corporal Verne Orndorff of the New Castle County Police testified that Lance told him that he had been left to care for Michael while Jennifer was out picking up her daughter at a friend's house. Lance said that he had been sitting on the sofa watching television while Michael was playing. At about 9:30 p.m., Lance told Michael to go to bed. According to Lance, Michael walked up the stairs, which were carpeted, and then fell back down, making an "L" turn at a small landing before he fell onto his stomach. Lance told Corporal Orndorff that he ran to Michael, who was gasping for air, picked him up, and carried him to the sofa. He then went to the house of his neighbor, Ann Cline.

Patrolwoman Michele Hinson testified that Lance made a similar statement to her on the night of Michael's death. In his statement to Patrolwoman Hinson, however, Lance stated that after Michael fell down the stairs, Michael got up and ran toward Lance, waving and pointing to his neck, as though something was caught in his throat. Patrolwoman Hinson testified that Lance told her this version of the events on two separate occasions that evening.

Detective John Reyes testified for the State about a statement that Lance made to him on the evening of Michael's death. Lance told Reyes that after Michael fell down the stairs, the child began gagging. According to Reyes, Lance stated that he picked Michael up, shook him and placed him on the sofa. Lance then went to get Cline.

The State also called Cline as a witness. On direct examination, Cline testified that when she arrived at Lance's home, Michael was lying on the couch. She stated that she immediately attempted to perform mouth-to-mouth resuscitation on Michael. However, she denied performing any chest compressions until the emergency technician instructed her on the proper manner of doing so over the telephone. Before cross-examining Cline, Lance's attorney requested copies of any prior statements that Cline had made to the police. The State objected and argued that it was only required to provide such a statement, if Cline had used the statement in preparation for her trial testimony. The Superior Court agreed with the State's position and summarily denied Lance's request for production of any prior statement by Cline to the police.

The State also offered testimony from the Chief and Deputy Chief Medical Examiner, both pathologists. In their testimony, these medical doctors each opined that Michael's death was a homicide caused by multiple blunt force injuries to the head, neck, and abdomen, with a ruptured small intestine and laceration of the abdominal aorta. Both physicians testified, to a reasonable degree of medical certainty, that Michael's injuries were not caused by someone improperly performing CPR. Both doctors also stated, to a reasonable degree of medical certainty, that Michael's death was not caused by a fall down the stairs but by multiple blows to the body.

Lance testified in his own defense. According to Lance, Michael had always been clumsy, often falling and hurting himself. Lance testified that he told Michael to go to bed and that Michael had walked up the carpeted stairs. Lance said that he soon heard a noise, jumped up, and found Mi-

chael at the bottom of the stairs choking with his tongue hanging out. Lance testified that he picked Michael up, shook him slightly, and placed him on the sofa. Lance stated then he went to get Cline because he did not have a car and he believed that Cline knew CPR. Lance denied telling Patrolwoman Hinson that Michael had gotten up after falling down the stairs. Lance denied beating, kicking, or striking Michael with a board.[4] He also denied telling Officer Hinson that Michael had gotten up after falling down the stairs.

In support of his defense, Lance offered the testimony of Valerie Swoboda–Mague, a registered nurse and an expert in CPR. She testified that improper administration of CPR to children may result in the internal injuries, such as fractured ribs, punctured lungs, a lacerated liver or a ruptured duodenal junction. In rebuttal, the State introduced the testimony of Stephen Ludwig, M.D. He stated that Michael's aorta could not have been ruptured by improper CPR. According to Dr. Ludwig, there was a reasonable degree of medical certainty that Michael's death was a homicide.

### The Parties' Contentions

The sole issue raised by Lance on appeal is whether the Superior Court erred when it refused to require the State to produce any prior statement Cline had given to the police, after Cline testified for the State on direct examination at trial, before her cross-examination was commenced by Lance's attorney. The record reflects that the following exchange took place during a side bar conference immediately after the State completed its direct examination of Cline.

. . . . .

---

4. One of the State's exhibits was a wooden board which the police seized from the home where Lance and Michael resided.

5. This Court's decision in *Hooks* adopted the federal courts' "carefully considered approach" to the rule in *Jencks,* being applied in the federal courts following its codification. *Hooks v. State,* 416 A.2d at 200. The *Jencks* Act requires the production of certain statements and reports of a witness, including:

DEFENSE ATTORNEY: I am formally requesting that the State at this point in time provide me with any statements, any interviews, that were conducted by New Castle County Police Department, or anyone else, for that matter, of Ann Cline, in connection with the alleged murder second degree charge that my client faces.

PROSECUTRIX: The State's position is that Jencks covers those materials which are used by a witness to prepare themselves for testimony, whatever the source of those materials. In this case, the State reports that this witness has been provided with no information to prepare her for the testimony other than a copy of the transcript of the recording tape, which the verbal version is already in evidence.

This witness did make a statement to the police, but has never seen it.

THE COURT: All right. I will decline to order the State to produce the statement at this time. (End of sidebar).

Lance argues that the *Jencks* rule required the State to produce any prior statements that Cline had given to the police. The *Jencks* rule was first articulated in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). "Under the rule [in *Jencks*], the defense, upon demand at the time of cross-examination, is entitled to statements of government witnesses made to governmental agents if the contents thereof relate to the subject matter of the direct examination." *Hooks v. State,* Del.Supr., 416 A.2d 189, 200 (1980). The trial courts of Delaware initially followed the *Jencks* rule as a matter of custom. *Id.* However, in *Hooks,* this Court expressly approved the *Jencks* rule and adopted it.[5] *Id.*

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

The State's objection at trial assumed that Cline had given a pretrial statement to the police but that it was not discoverable under the *Jencks* rule. However, as a result of the Superior Court's summary denial of Lance's request for production, any pretrial statement by Cline is not in the record. Notwithstanding that omission, in this appeal, the State acknowledges that Cline did make a pretrial statement to the police and it was recorded. The State is commended for that acknowledgement.

Therefore, it is undisputed that Cline made a recorded pretrial statement to the police. Nevertheless, the State argued at trial and continues to argue on appeal that it was not required, as a matter of Delaware law, to produce Cline's pretrial statement. The State contends that the Delaware Rules of Evidence, adopted by this Court in 1980, expressly modified the Delaware *Jencks'* rule by requiring the government to produce a witness' statement only when the statement is used to refresh the memory of that witness. *See* D.R.E. 612(b).[6]

In support of its position, the State relies upon the preface to the Delaware Rules of Evidence. The preface provides that the rules shall "supersede any inconsistent rule of evidence or rule of procedure prevailing in any Delaware Court." *In re Adoption of the Delaware Uniform Rules of Evidence*, Del.Supr., *en banc* (Feb. 1, 1980). The State concludes that because differences exist between the *Jencks* rule and Delaware Rule of Evidence 612(b), the two rules are inconsistent.

### Delaware's Jencks Rule Delaware Rule of Evidence 612

The advisory comment to Delaware Rule of Evidence 612 notes that it differs in form, but not in substance, from its federal counterpart. *See* D.R.E. 612 comment.

The federal Advisory Committee comment to Federal Rule of Evidence 612 summarizes the pertinent distinctions between the *Jencks* Act and Federal Rule of Evidence 612. Accordingly, that synopsis by the federal Advisory Committee is instructive during an examination of the correlation between the *Jencks* rule and Delaware Rule of Evidence 612.

> The *Jencks* statute applies only to statements of witnesses; the rule [612] is not so limited. The statute applies only to criminal cases; the rule applies to all cases. The statute applies only to government witnesses; the rule applies to all witnesses. The statute contains no requirement that the statement be consulted for purposes of refreshment before or while testifying; the rule so requires. *Since many writings would qualify under either [the Jencks] statute or rule [612], a substantial overlap exists*, but the identity of procedures makes this of no importance.

F.R.E. 612 Advisory Committee's Note (emphasis added). Thus, the federal Advisory Committee has expressly stated that, rather than being inconsistent, the *Jencks* Act and Federal Rule of Evidence 612 are *consistent to the point of overlapping*.

The State suggests that the commentary to Federal Rule of Evidence 612 is not didactic in this appeal because that federal rule is expressly qualified by the *Jencks* Act in criminal proceedings. *See* F.R.E. 612 ("Except as otherwise provided in criminal proceedings in section 3500 of title 18, United States Code...."). Thus, the State argues that the failure of Delaware Rule of Evidence 612 to expressly retain *Jencks* reflects an intention by this Court to supersede its adoption of the *Jencks* rule in *Hooks* with the enactment of Delaware Rule of Evidence 612(b). The context in which the *Jencks* rule was adopted in

---

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
*Jencks* Act, 18 U.S.C. § 3500(e) (1985).

**6.** Delaware Rule of Evidence 612(b) states:
(b) **Before Testifying.** If, before testifying, a witness uses a writing or object to refresh his memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing or deposition in which the witness is testifying.

*Hooks* and the progeny of the *Jencks* rule in Delaware do not support that argument.

■ The Delaware Rules of Evidence were adopted by this Court on February 1, 1980 and became effective on July 1, 1980. Delaware adopted the *Jencks* rule when the decision in *Hooks* was announced on May 30, 1980. *Hooks v. State*, 416 A.2d at 189. Consequently, this Court adopted the *Jencks* rule for Delaware approximately four months *after* this Court promulgated Delaware's Rules of Evidence and one month *before* those rules were to become effective.

In *Hooks*, cognizant of its prior action with respect to the Delaware Rules of Evidence, this Court made specific reference to the distinction between the *Jencks* rule it was adopting and Delaware Rule of Evidence 612 which would become effective on July 1, 1980. *Id.* at 201. In *Hooks*, after noting the substantive similarities between Federal Rule of Evidence 612 and Delaware Rule of Evidence 612(b), this Court recognized that a *Jencks* claim and a claim under Delaware Rule of Evidence 612(b) were distinguishable. *Hooks v. State*, 416 A.2d at 200–201. Therefore, just as Federal Rule of Evidence 612 was expressly qualified by reference to the *Jencks* Act, this Court's adoption of the *Jencks* rule for Delaware was expressly qualified by a recognition of its compatibility with what was to become Delaware's Rule of Evidence 612. Thus, in *Hooks*, this Court clearly contemplated that its adoption of the *Jencks* rule would not be modified when Delaware's Rule of Evidence 612 became operative one month later.

Moreover, this Court's adoption of the *Jencks* rule in *Hooks* has been adhered to in its subsequent decisions, notwithstanding the operative effect of Delaware Rule of Evidence 612(b). *Gardner v. State*, Del. Supr., 567 A.2d 404 (1989); *Rose v. State*, Del.Supr., 542 A.2d 1196 (1988); *Riley v.*

*State*, Del.Supr., 496 A.2d 997 (1985); *McBride v. State*, Del.Supr., 477 A.2d 174 (1984). The distinction between the *Jencks* rule and Delaware Rule of Evidence 612, which was anticipated in *Hooks*, was specifically reiterated by this Court in *Rose v. State*, Del.Supr., 542 A.2d 1196, 1198 (1988). More recently, this Court held that while there is no requirement for the State to identify *Jencks* material in pretrial discovery, the State has a duty to provide a witness' *Jencks* statement when "the witness is tendered for cross-examination." *Gardner v. State*, Del.Supr., 567 A.2d 404, 412 (1989).

### This Case

In this case, the record reflects that Lance's trial attorney made a timely request after Cline's direct testimony, pursuant to Delaware's *Jencks* rule, for the production of any pretrial statement that had been· made by Cline to the police. The Superior Court denied that request on the incorrect premise that the State was only required to produce Cline's prior statement to the police if she had used it to refresh her recollection before testifying. The Superior Court's ruling misconstrued the proper operation of the *Jencks* rule in Delaware. Consequently, its ruling was erroneous, as a matter of law.[7]

■ The *Jencks* rule is intended to further the fair administration of justice in criminal proceedings. *Campbell v. United States*, 373 U.S. 487, 495, 83 S.Ct. 1356, 1361, 10 L.Ed.2d 501 (1963). The question that must now be answered is what was the effect of the Superior Court's erroneous decision. The State argues that the Superior Court's ruling, albeit erroneous, was harmless. We agree that violations of the *Jencks* rule are subject to a harmless error analysis. Super.Ct.Crim.R. 52(a). *See Goldberg v. United States*, 425 U.S. 94,

7. On December 1, 1980, Federal Rule of Criminal Procedure 26.2 was enacted. Its purpose was to "place in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the *Jencks* Act)" and to establish procedures, not only "for the production of statements of government witnesses, but also for the production of defense witnesses' statements as well." 8A James W. Moore, et al., Moore's Federal Practice para 26.2.01[2] (1990). We note that the Delaware Superior Court has recently adopted a similar rule of criminal procedure, to take effect on January 1, 1992.

111 n. 21, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976); *United States v. Augenblick*, 393 U.S. 348, 355–56, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969); *Campbell v. United States*, 373 U.S. 487, 495–96, 83 S.Ct. 1356, 1361–62, 10 L.Ed.2d 501 (1963); *Rosenberg v. United States*, 360 U.S. 367, 371, 79 S.Ct. 1231, 1234, 3 L.Ed.2d 1304 (1959).

In performing a harmless error analysis, the "reviewing court must consider both the importance of the error and the strength of the other evidence presented at trial" to determine whether the error may have affected the judgment. *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 10 (1987). Therefore, a review of the entire record is necessary to analyze the significance of an error. In *Hooks*, for example, the statements at issue were produced at trial and inspected *in camera. Hooks v. State*, 416 A.2d at 200. On appeal, this Court was then able to review the statements and the transcript of the Superior Court's *in camera* inspection. *Id.*

█ In this case, a review of Cline's statement to the police is critical to any meaningful harmless error analysis. Unfortunately, as previously noted, Cline's statement was not examined by the Superior Court and is not a part of the record before this Court because the Superior Court summarily denied Lance's request for production. This Court cannot speculate on whether Cline's unknown and non-disclosed pretrial statement was *Jencks* material that could have been utilized effectively by Lance's attorney at trial. *Clancy v. United States*, 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574 (1961). Given the incomplete record that was made when the Superior Court denied Lance's request for production, it would be unjust to either affirm or reverse Lance's conviction without any judicial examination of Cline's pretrial statement to the police. *Goldberg v. United States*, 425 U.S. 94, 111–12, 96 S.Ct. 1338, 1348–49, 47 L.Ed.2d 603 (1976).

Therefore, this matter must be remanded to the Superior Court for further review. *Id.* On remand, the Superior Court should examine Cline's statement on the record. It should then weigh the content of Cline's statement against the strength of the other evidence presented by both parties at trial. Thereafter, it must evaluate the effect of its original erroneous decision not to provide Lance with a copy of Cline's recorded pretrial statement to the police. *Id.*

*Conclusion*

The matter is REMANDED for further proceedings in accordance with this opinion. Jurisdiction is retained. Supr.Ct.R. 19(c).