Vincent C. JOHNSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 14, 1992.

Decided: Jan. 24, 1992[1].

---

**1.** This decision was originally issued as an order. Supr.Ct.R. 17.

Anthony A. Figliola, Jr. of Figliola & Facciolo, Wilmington, for appellant.

Timothy J. Donovan, Jr. of Dept. of Justice, Wilmington, for appellee.

Before HORSEY, WALSH, and HOLLAND, JJ.

HOLLAND, Justice.

The defendant-appellant, Vincent C. Johnson ("Johnson") was convicted, following a jury trial in the Superior Court, of Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Possession of Drug Paraphernalia, Maintaining a Dwelling for Keeping a Controlled Substance, Carrying a Concealed Deadly Weapon, and Possession of a Deadly Weapon During the Commission of a Felony. On January 25, 1991, Johnson was sentenced on all convictions. Those sentences were imposed consecutively and included a minimum term of incarceration, followed by probation.

The sole issue raised in this direct appeal relates to Johnson's convictions on the two weapons charges. Johnson contends that his right to due process was denied when the prosecuting attorney failed to disclose favorable and material information to Johnson regarding the prior criminal record of a State's witness in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court has concluded that this matter must be remanded to the Superior Court for further proceedings.

### Facts

The record reflects that on May 24, 1990, at about 5:30 p.m., officers from the City of Wilmington police department executed a search warrant for an apartment that was leased in the name of Johnson and Johnson's brother. No one was present in the apartment when the officers arrived. While the police were inside the apartment, one officer observed Johnson drive up in a 1983 Lincoln Continental. The police officers also had a search warrant for the vehicle.

The officers saw Johnson, who was holding a portable telephone in his hand, exit the vehicle along with a woman and another man, who was later identified as Dennis Lundy ("Lundy"). The police accosted Johnson and his companions as they walked toward the apartment. Johnson dropped the telephone upon seeing the police. The police retrieved the telephone and found cocaine concealed inside of it.

A search of the apartment revealed, *inter alia*, drug paraphernalia, cutting agent, a number of plastic bags (some containing a white, powdery residue), and a nine millimeter bullet. These objects were found in a bedroom that contained Johnson's personal effects. A search of the Lincoln Continental, which was titled in the name of Johnson's girlfriend, revealed a partially burned marijuana cigarette and a nine millimeter semi-automatic handgun. A search of Johnson's person revealed $1,816 in cash.

At trial, Johnson testified in his own defense. According to Johnson, he did not live in the apartment. He stated that he had co-signed the lease only as a favor to his brother. Johnson denied ownership or knowledge of any items seized during the search of the apartment. Johnson also contended that he had no knowledge of the weapon found in the Lincoln Continental, implying that the weapon was either already hidden in the vehicle before Johnson began driving it, or that the weapon was concealed in the vehicle without Johnson's knowledge by one of the other occupants while Johnson was driving. Although Johnson admitted that he owned the portable telephone confiscated by the police, he alleged that Lundy, the other man in the vehicle, had been holding the telephone, implying that it was Lundy who had placed the drugs inside of the phone.

The State called Lundy as a rebuttal witness, although he had not been subpoenaed by either party. Lundy had pled guilty to drug charges stemming from this

incident and had been sentenced prior to Johnson's trial. Lundy testified on direct examination that he had not been a passenger in the Lincoln Continental on the day Johnson was arrested, even though a police officer had testified previously that he had observed Lundy exit the vehicle. Lundy also denied carrying the portable telephone in which cocaine was found.

During cross-examination, Johnson's trial attorney questioned Lundy about his prior drug offenses. Lundy admitted to prior convictions for drug possession. He offered no further information and Johnson's attorney asked no further questions about Lundy's prior convictions.[2] However, prior to trial, Johnson's attorney had filed a discovery request with the prosecuting attorney. One of Johnson's pretrial discovery requests was for the disclosure of "[a]ny materials in the possessions [sic] of the State which tends [sic] to exculpate the defendant, including ... evidence in the possession of the State indicating that a State witness has any conviction for a felony...." [3]

After Johnson was convicted, but prior to his sentencing, Johnson's trial attorney learned that Lundy had prior felony convictions, including both drug charges and a related weapons offense. Upon learning this information, Johnson's trial attorney filed a motion for a judgment of acquittal. In his motion, Johnson asserted that the prosecuting attorney had engaged in misconduct by failing to disclose Lundy's prior record and by failing to clarify Lundy's sworn testimony about the substance of his criminal record. Consequently, Johnson

contended, if the jury had known that Lundy had previously pled guilty to a weapons offense, then "the jury may very well [have] found Vincent Johnson not only not guilty of the two weapons charges but not guilty of all the charges." The State denied any misconduct by the prosecutor. The Superior Court denied Johnson's motion for a judgment of acquittal.

### Brady Material

### Criminal Record/Prosecution Witness

In this appeal, Johnson has abandoned any allegations of intentional prosecutorial misconduct associated with the nondisclosure of Lundy's prior record. Nevertheless, Johnson contends that Lundy's criminal history was exculpatory and material to Johnson's case, and thus that even an inadvertent failure by the prosecutor to disclose this information constituted a *Brady* violation. *See United States v. Perdomo*, 929 F.2d 967 (3d Cir.1991). Johnson argues that the proper remedy for this *Brady* violation is a new trial on the weapon charges only.

In its answering brief, the State acknowledged that it has a duty to disclose evidence that is favorable to a criminal defendant, upon request of defense counsel, if the evidence is material to either the guilt or punishment of the defendant. *See Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196. The State's original position, however, was that the nondisclosure of Lundy's prior criminal record did not constitute a *Brady* violation because the prosecutor in Johnson's case "was unaware of the convic-

---

**2.** The entire exchange between Lundy and Johnson's trial attorney regarding Lundy's prior record was as follows:

Q. Is this the first time you have been convicted of a drug charge?
A. No.
Q. You have had other ones in the past?
A. Yeah.
Q. What kind of other charges?
A. Possession.
Q. Do you have a drug problem today?
A. Yes. Obviously, I'm here.
Q. Do you also smoke marijuana from time to time or in the past?
A. I have in the past. I haven't recently, no.

Q. And was it part of your Plea Agreement with the State that you testify here today?
A. No, absolutely not. I wasn't—I had no idea I was going to testify in this trial up till this morning when they picked me up at the job.

**3.** The prosecuting attorney's overall response to Johnson's discovery request did not mention Johnson's specific request for the prior felony records of any State witnesses. The prosecutor maintained only that, "At this time the State is unaware of any *Brady* materials beyond what may be contained in the police reports. If you believe such evidence exists, please advise me of the specific nature of your belief and I will respond."

tion." The State has since acknowledged that the good faith or bad faith of the prosecuting attorney is irrelevant in determining whether the nondisclosure of material evidence constitutes a *Brady* violation. *Id. See United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir.1991). The State has also now acknowledged that the prosecutor's failure to disclose Lundy's prior record to Johnson, albeit inadvertent, constituted a *Brady* violation. *Id.*

Notwithstanding these acknowledgments, the State asserts that, because Johnson's motion for a judgment of acquittal in the Superior Court did not characterize the State's failure to disclose Lundy's prior criminal record as a *Brady* violation, Johnson has waived his right to challenge that nondisclosure as a *Brady* violation on appeal. Supr.Ct.R. 8. Alternatively, the State contends that, despite the prosecutor's inadvertent *Brady* violation, the evidence of Lundy's prior conviction would have been inadmissible under Delaware Rules of Evidence 404(b) and 609. Consequently, the State's alternative argument is that the prosecutor's failure to disclose Lundy's prior criminal record constitutes harmless error. *See Michael v. State,* Del. Supr., 529 A.2d 752, 757 (1987).

### *Plain Error Review*

### *Brady Material Nondisclosure*

 This Court will generally only review questions on appeal that were fairly presented to the trial court for decision unless otherwise required by the interests of justice. Supr.Ct.R. 8; *Probst v. State,* Del.Supr., 547 A.2d 114, 119 (1988). In the present case, both parties agree that the issue of the prosecutor's nondisclosure of Lundy's prior criminal record was presented to the Superior Court but not as a *Brady* violation. Both parties on appeal also now agree, however, that the State's inadvertent nondisclosure was, in fact, a *Brady* violation. Given the facts of this case, and Lundy's weapons convictions, the interests of justice require an examination of the harm caused by an undisputed, albeit unintentional, violation of *Brady.*

*United States v. Perdomo,* 929 F.2d 967 (3d Cir.1991).

### *Harmless Error Analysis*

### *Brady Material Nondisclosure*

In *Michael v. State,* Del.Supr., 529 A.2d 752 (1987), this Court recognized that in reviewing alleged *Brady* violations, two questions must be answered: "First, was the non-disclosure at issue a violation of *Brady*? Second, if the non-disclosure was contrary to the dictates of *Brady,* what was the nature of the error?" *Id.* at 755. The only issue in this case is to determine the nature of the error. *Michael v. State,* 529 A.2d at 755.

 *Brady* violations are subject to a harmless error analysis. *Id.* In a similar context, the United States Court of Appeals for this Circuit has recently concluded that the nature of the harm caused to Johnson by the admitted *Brady* violation should be addressed by the trial court in the first instance. *United States v. Perdomo,* 929 F.2d 967 (3d Cir.1991). Consequently, based upon that precedent, this Court has determined that this matter must be remanded to the Superior Court. *Id. See also Lance v. State,* Del.Supr., 600 A.2d 337 (1991).

### *Conclusion*

This case is REMANDED to the Superior Court for further proceedings, to consider the nature of the harm caused to Johnson by the *Brady* violation which occurred. Jurisdiction in this matter is retained pursuant to Supreme Court Rule 19(c).