# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. Nos. 1108000561A |
| | ) | 1108000561B |
| ALAN L. FOWLER, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 30, 2017
Decided: September 29, 2017

Upon Defendant's Motion for Postconviction Relief
**DENIED.**

## ORDER

Danielle J. Brennan, Esquire, and James K. McCloskey, Esquire, Deputies Attorney General, Department of Justice, 820 N. French St., Wilmington, Delaware, Attorneys for the State.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., 3200 Concord Pike, Wilmington, Delaware 19803, Attorney for the Defendant.

**WHARTON, J.**

This 29th day of September, 2017, upon consideration of Defendant's timely first Amended Motion for Postconviction Relief,[1] the State's Response,[2] the Defendant's Reply,[3] the Affidavit of trial and appellate counsel Patrick J. Collins, Esquire, and the record in this matter, it appears to the Court that:

1.      Defendant Alan Fowler ("Fowler") was indicted by the Grand Jury on three counts of Attempted Murder First Degree, two counts of Reckless Endangering First Degree, five counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), two counts of Possession of a Firearm by a Person Prohibited ("PFBPP") and one count of Criminal Mischief.[4] The indictment encompassed two separate shooting incidents – one on July 2, 2011 and the other on July 31, 2011.[5]

2.      On December 19, 2011, Fowler's then attorney, Joseph A. Hurley, Esquire filed a Motion for Relief from Unfair Prejudice and Prejudicial Joinder, seeking to sever the PFBPP charges and the two incidents.[6] On February 6, 2012, this Court granted the motion as to the PFBPP charges, but refused to sever the two incidents, finding that Fowler "failed to establish a reasonable probability that the trial of the July 2nd and July 31st charges will result in actual prejudice or substantial

---

[1] D.I. 174.  Docket Item references are to I.D. No 1108000561A
[2] D.I. 182.
[3] D.I. 184.
[4] D.I. 3.
[5] *Id.*
[6] D.I. 7.

2

injustice."[7] The Court further found that "[t]he hypothetical prejudice posed by the cumulative effect of the charges is not sufficient to justify severance of the charges and separate trials."[8]

3.      Later, on May 14, 2012, the parties stipulated to a severance of the two incidents, with the State agreeing to proceed on the charges relating to the July 31st incident first.[9] Apparently, the State agreed to sever the two incidents for trial as an accommodation to Mr. Hurley who had a conflict of interest with respect to one of the witnesses in the July 2nd incident.[10] Nonetheless, Mr. Hurley moved to withdraw as counsel on May 30, 2012.[11] That motion was granted on June 11, 2011.[12] Thereafter, a period of uncertainty ensued regarding Fowler's representation, extending at least through September 6, 2012 when the State's Motion to Exclude Defense Counsel (who had been privately retained) was denied.[13] The prior conflict involving Mr. Hurley having become moot, on October 10, 2012 the State moved to consolidate the charges it had previously agreed to sever as an accommodation to Mr. Hurley. That motion was granted on October 16th.[14]

---

[7] D.I. 9.
[8] *Id.*
[9] D.I. 24.
[10] D.I. 1, at 13; D.I. 2, at 2; D.I. 61.
[11] D.I. 41.
[12] D.I. 43.
[13] D.I. 57.
[14] D.I. 61.

Ultimately, Patrick J. Collins, Esquire entered his appearance on Fowler's behalf on December 18, 2012.[15]

4.    On May 16, 2013, a jury found Fowler guilty of two counts of Attempted Murder First Degree, three counts of Reckless Endangering First Degree (one of which was a lesser included offense of one of the attempted murder counts), five counts of PFDCF and Criminal Mischief (I.D. No. 1108000561A). He was found guilty of two counts of PFBPP by the Trial Judge after he had waived his right to a jury trial on those charges (I.D. No. 1108000561B).[16] Subsequently, the Court granted motions for judgment of acquittal as to one of the Attempted First Degree Murder charges and its companion PFDCF charge.[17] In total, he was sentenced to 88 years of incarceration, suspended after 50 years, followed by decreasing levels of supervision.[18]

5.    Fowler appealed his conviction to the Delaware Supreme Court. That court entered an Order affirming his conviction on January 22, 2015 on the basis of this Court's Order of February 6, 2012 denying severance.[19] Fowler's Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61, his first, and a

---

[15] *See* D.I. 102.
[16] D.I. 132.
[17] D.I. 143.
[18] D.I. 142.
[19] *Fowler v. State,* 108 A.3d 1225 (Del. 2015) (Table); 2015 WL 304227 (Del. 2015).

Motion for Appointment of Counsel, were filed timely on January 11, 2016.[20] The Court ordered that counsel be appointed on February 2, 2016.[21] On October 19, 2016, Natalie S. Woloshin, Esquire, was appointed to represent Fowler.[22] Postconviction counsel submitted an Amended Motion for Postconviction Relief ("Amended Motion") on March 10, 2017.[23] At the direction of the Court, trial and appellate counsel Patrick J. Collins, Esquire, submitted an affidavit responding to the allegations of ineffective assistance of counsel in the Amended Motion.[24] The State filed its Response to Defendant's Amended Motion for Postconviction Relief on May 15, 2017 ("Response"),[25] and Fowler replied on June 30, 2017 ("Reply").[26]

6. The Amended Motion raises two claims for relief: 1) appellate counsel was ineffective in failing to raise on appeal an allegation that the state exercised an abuse of discretion in seeking to rejoin charges relating to separate incidents that it had previous agreed to sever; and 2) the prosecutor's failure to produce previously requested *Jencks* material violated Fowler's constitutional rights and prejudicially affected his right to a fair trial.[27]

---

[20] D.I. 162, 163. Fowler actually has filed two identical motions, one for I.D. No 1108000561A and one for I.D. No. 1108000561B. Since the motions are identical, the Court will treat them as a single motion.
[21] D.I. 165.
[22] D.I. 167.
[23] D.I. 174.
[24] D.I. 180. Mr. Collins addressed the second issue raised by the Amended Motion in his affidavit as well.
[25] D.I. 182.
[26] D.I. 184.
[27] D.I. 174.

5

7.  Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[28] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[29]

8.  Under Delaware Superior Court Rules of Criminal Procedure, a motion for post-conviction relief can be barred for time limitations, successive motions, procedural defaults, and former adjudications. A motion exceeds time limitations if it is filed more than one year after the conviction becomes final or if it asserts a newly recognized, retroactively applied right more than one year after it was first recognized.[30] A second or subsequent motion is considered successive and therefore barred and subject to summary dismissal unless the movant was convicted after a trial and "pleads with particularity that new evidence exists that the movant is actually innocent" or "pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction … invalid."[31] Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedurally defaulted unless the movant can show "cause for relief from the

---

[28] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[29] *Id.*
[30] Super. Ct. Crim. R. 61(i)(1).
[31] Super. Ct. Crim. R. 61(i)(2), citing Super. Ct. Crim. R. 61(d)(2)(i) and (ii).

procedural default" and "prejudice from [the] violation of the movant's rights."[32] Grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[33] These bars to relief may be overcome, however, if the claim is jurisdictional or if it pleads with particularity a claim of a strong inference of actual innocence based on new evidence or a new retroactive rule of constitutional law applying to the movant's case that renders the conviction invalid.[34]

9. The State argues that Fowler's ineffective assistance of counsel claim is based on a procedurally defaulted claim not previously raised at trial or on appeal. That claim is that the State abused its discretion in seeking to rejoin charges involving separate incidents that it had previously agreed to sever. The State's position is that Fowler cannot show "cause for relief" and "prejudice from [the] violation" in order to make the procedural default bar inapplicable. In essence, the State argues that Fowler cannot show cause and prejudice since his appellate counsel was not ineffective in failing to raise the severance claim as an abuse of prosecutorial discretion under *Strickland v. Washington*.[35] The State's argument misses the point. Fowler's point is that his appellate counsel was

---

[32] Super. Ct. Crim. R. 61(i)(3).
[33] Super. Ct. Crim. R. 61(i)(4).
[34] Super. Ct. Crim. R. 61(i)(5), citing Super Ct. Crim. R. 61(d)(2)(i) and (ii).
[35] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

ineffective *because* he failed to raise the abuse of prosecutorial discretion argument on direct appeal. The State's position is circular – Fowler is procedurally defaulted from raising an ineffective of counsel claim because his appellate counsel was not ineffective in failing to raise the abuse of prosecutorial discretion claim on appeal. The State's approach confuses a procedurally defaulted claim with a claim lacking substantive merit. Accordingly, the Court finds that Fowler's ineffective assistance of counsel claim is not barred as procedurally defaulted.[36]

10. To successfully bring an ineffective assistance of counsel claim, a claimant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiencies prejudiced the claimant by depriving him or her of a fair trial with reliable results.[37] To prove counsel's deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness.[38] Moreover, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[39] "[A] court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[40] A successful Sixth Amendment claim of ineffective assistance of counsel requires a showing "that there is a reasonable probability that,

---

[36] *See Lacombe v. State,* 2017 WL 2180545 (Del. 2017).
[37] *Id.*
[38] *Id.* at 667-668.
[39] *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[40] *Strickland,* 446 U.S. at 689.

but for counsel's unprofessional errors, the result of the proceeding would have been different."[41]

11. Fowler's ineffective assistance of counsel claim fails both *Strickland's* performance and prejudice prongs. The Court has read, and re-read, and read yet again Fowler's allegation the State abused its discretion to his detriment when it sought to rejoin charges that it had previously agreed to sever in order to accommodate Fowler's then attorney. What this allegations seems to boil down to is that it was wrong for the State to change its mind and to take a long time to do it.[42] Why it was wrong is anybody's guess. Certainly Fowler does not provide a persuasive explanation. He argues that he would have made different strategic decisions at trial if the charges had remained severed, but reliance on that argument is unavailing since both the Superior Court and the Supreme Court have rejected his arguments that he was unfairly prejudiced by joinder of the charges. At best, he argues that it took too long for the State to move to reconsolidate the charges, and did so for reasons that he claims not to understand. Here, he overstates his case. While it is true that Mr. Hurley was permitted to withdraw on June 11, 2012 and the State did not file its motion until October 10, 2012, a period of four months (not

---

[41] *Id.* at 694.

[42] In the Amended Motion Fowler states, "It is also unclear whether the family connections of one of the State's witnesses, Emily Godek, played into this decision." D.I. 174, at 14. The father of a State's witness "was a retired New Castle County Police Officer and still had connections with the department." *Id.,* at n. 65. This type of innuendo, unsupported by any facts, is unworthy of the Court's consideration.

nearly five as Fowler claims), it is also true that Fowler's representation was in flux until at least September 6th, and possibly later. To the extent that it matters, and the Court is not convinced that it does, the Court does not find that the State waited an inordinate amount of time to move to consolidate. Fowler purports to be at a loss as to why the State changed its position on severance, but the answer seems obvious – the State agreed to severance to accommodate Mr. Hurley. Once Mr. Hurley was out of the case, the reason to sever no longer existed and the State returned to its original position that both incidents should be joined for trial. Finally, the State did not unilaterally rejoin the charges. This Court, exercising its discretion, approved the motion. There was simply no prejudice to Fowler occasioned by the State's change of position. Further, there was no chance that recasting the severance argument as an abuse of prosecutorial discretion argument would have been successful on appeal when the stronger of the two arguments – the severance argument – was actually argued and failed. It follows then that appellate counsel's representation was not deficient in omitting that argument and Fowler suffered no prejudice. Accordingly, Fowler was not deprived of effective assistance of counsel on appeal.[43]

---

[43] The Court is mindful that appellate counsel's affidavit states that he "failed to conceptualize that a valid claim existed as to the State's shifting positions on joinder and severance." D.I. 180, at 2. Nevertheless, the Court is unpersuaded that a "valid claim existed."

12. Fowler's second claim is that the State's failure to produce *Jencks* material, despite a timely request, prejudicially affected his substantial rights.[44] The underlying circumstances giving rise to this claim are not in dispute. The State acknowledged that did not meet its *Jencks* obligations in that it "inadvertently failed to provide certain interviews of witnesses...prior to their testimony."[45] Both Fowler and the Court accept this explanation. *Jencks,* which has been codified as Superior Court Criminal Rule 26.2, requires the State, upon request, to produce statements of a witness to the defense prior to the cross-examination of that witness.[46] Transcripts of interviews of Brett Chatman, Jonathan Duarte, Emily Godek and Lance Walstrum were not provided to the defendant during trial or on direct appeal, but were provided only to postconviction counsel when the State became aware of its "oversight."[47] Nonetheless, the State's position is that this claim is barred by Rule 61(i)(3) which bars claims not asserted in the proceedings leading to Fowler's conviction unless he can show cause for relief from the procedural default and prejudice from the violation of his rights.[48] The State acknowledges that Fowler "arguably has shown cause under Rule 61(i)(3)" since the State's violation of its *Jencks* obligations only was made known to the defense in these postconviction proceedings.[49] It is further

---

[44] D.I. 174, at 19-25.
[45] D.I. 182, at 13.
[46] *Jencks v. United States*, 353 U.S. 657 (1957).
[47] D.I. 182, at 13.
[48] *Id.*, at 12.
[49] *Id.*, at 13.

11

the State's position that Fowler must overcome this claimed procedural default by satisfying the pleading requirements of Rule 61(d)(2)(i) or (d)(2)(ii).[50] Those requirements are that the motion either "pleads with particularity a claim that new evidence exists that creates a strong inference that the movant is actually innocent" or "pleads with particularity a claim that a new rule of constitutional law...applies to the movant's case and renders the conviction...invalid." Neither of these requirements, in the State's view, has been met by Fowler. In reply, Fowler makes the obvious point that he has shown cause for his failure to raise the *Jencks* issue before because the State's violation was unknown to him until the State disclosed it on postconviction relief.[51] He also asserts that this claim raises new evidence under (d)(2)(i).[52] The problem with the State's procedural default argument is, like its argument on Fowler's ineffective assistance of counsel claim, that it requires the Court to make a determination on the underlying merits of the claim, that is whether Fowler has established a violation of his substantial rights or that new evidence of his actual innocence exists, *before* making a determination that he is procedurally defaulted. But determinations on the merits are to be made *after* the Court determines that there is no procedural default. Accordingly, the Court finds that Fowler's *Jencks* claim is not procedurally defaulted.

---

[50] *Id.*, at 12.
[51] D.I. 184, at 6.
[52] *Id.*

13.     Turning to the merits of the issue, the Court employs a harmless error analysis for *Jencks* violations.[53] Reversal for a discovery violation, which is what a *Jencks* violation is, is warranted only if a defendant's "substantial rights [were] prejudicially affected."[54] The Delaware Supreme Court first set out a three-pronged test for making that determination in *Hughes v. State*.[55] This Court must examine: 1) the closeness of the case; 2) the centrality of the error to the case; and 3) steps taken to mitigate the effects of the violation.[56] These factors are not conjunctive, and one factor may be determinative.[57] Conversely, the Court does not consider the factors to be disjunctive either, in the sense that only one factor need favor the defendant to require reversal. Rather, the Court looks at the relative significance of each factor in the overall context of the case. In performing this harmless error analysis the Court must consider not only the importance of the error, but the strength of the evidence presented at trial to determine whether the error may have affected the judgment.[58] Such an analysis requires a review of the entire record.[59]

14.     The Court has reviewed the trial transcript as well as transcripts of the undisclosed statements of Bret Chatman, Jonathan Duarte, and Emily Godek and

---

[53] *Lance v. State*, 600 A.2d 337, 342 (Del. 1991).
[54] *Valentin v. State*, 74 A.3d 645, 649 (Del. 2013).
[55] 437 A.2d 559, 571 (Del. 1981); *Skinner v. State*, 575 A.2d 1108, 1126 (Del. 1990).
[56] *Valentin*, at 649.
[57] *Kirkley v. State*, 41 A.3d 372, 376 (del. 201
[58] *Lance*, at 343 (citing *Van Arsdall v. State*, 524 A.2d 3, 10 (Del. 1987)).
[59] *Id.*

finds that the *Jencks* violation for failure to produce those statements was harmless beyond a reasonable doubt.[60] The Court further finds that the undisclosed statements do not constitute newly discovered evidence that creates a strong inference of actual innocence. The core issue in both the July 2nd incident and the July 31st incident was the identity of the shooter. That the incidents occurred was not controverted. In the July 2nd incident, the driver of a silver or gold Honda fired a number of shots at several people who were standing on the porch of 2 Myers Road in Robscott Manor, in Newark, Delaware. The vehicle was occupied by four people – Fowler, Brett Chatman, Tami Boyd and Danielle Maslin. Chatman, Boyd and Maslin all testified that Fowler was the driver of the vehicle and the shooter. The purported motive for the shooting was an abusive telephone call Michael Welcher, one of the people on the porch, had engaged in with Danielle Maslin. Maslin and Welcher had just broken up and were arguing on the telephone phone and, according to the witnesses, Fowler wanted to fight Welcher because of Welcher's abusive comments to Maslin. In the July 31st incident, shots were fired into a house at 49 Martindale Drive in Brookside, also in Newark. Again, a silver or gold Honda was involved, this time occupied by Fowler, Chatman, Jonathan Duarte and an unidentified black male. Both Chatman and Duarte identified Fowler as a shooter as well as the black male. Emily Godek, who was Fowler's girlfriend at the time of the incident, testified

---

[60] Fowler did not specify any harm to him as a result of the State's failure to produce the statement of a fourth witness, Lance Walstrom.

14

that Fowler confessed to her that on July 31st he went with Chatman and Duarte to 49 Martindale Drive, kicked the door of the house and then shot at it. She also testified that Fowler owned a "silverish-gold" Honda Accord. Additionally, an independent witness testified that one of the individuals shooting at the door of the house was wearing a striped polo shirt. Another independent witness, who did not see the actual shooting, testified that one of the individuals present at this incident was wearing a green and white striped polo shirt. A green and white striped polo shirt was recovered during the execution of a search warrant at a residence in Pennsylvania where Fowler was arrested. Also in the room where the shirt was found was Fowler's identification. Duarte, Chatman and Godek identified that green and white polo shirt as belonging to Fowler. The motive for this shooting was purported to be revenge for the stabbing of Fowler's brother earlier in the evening. Apparently it was thought, incorrectly as it turned out, that the person responsible for the stabbing lived at 49 Martindale Drive. Ballistics evidence identified the weapon used in both incidents as the same. Fowler did not testify, nor did he present any evidence. The focus of the defense summation at trial was that the State had not proved Fowler's guilt beyond a reasonable doubt because the State's witnesses had given inconsistent and contradictory statements and/or were driven by the own self-interested agendas.

15. The Court first turns to the centrality of the *Jencks* violation to the case. The Court views this prong of *Hughes* and the next prong the Court addresses – the

closeness of the case - as having the greatest significance in the context of this case. In assessing the centrality of the violation to the case, the Court considers whether the witness revealed the same information contained in the *Jencks* material while testifying,[61] how useful the *Jencks* material would have been in cross-examination,[62] and whether the *Jencks* material was repetitive or cumulative.[63] Fowler argues that the undisclosed statements were central to the case because they would have enhanced his ability to impeach Chatman, Duarte and Godek in a case where credibility was the central issue.[64]

16. With regard to Brett Chatman, Fowler identifies four specific statements in the undisclosed statement that he deems significant: 1) Chatman said that on July 2nd, he, Fowler, Maslin and Boyd were "hammered" as a result of drinking heavily; 2) despite testifying at trial that he was scared of Fowler, Chatman admitted that he hung out with Fowler four to five days after the July 2nd shooting; 3) Chatman stated that after the stabbing incident on July 31st prior to the shooting, Fowler threatened him and Duarte to get into his car and also threatened Duarte with a gun; and 4) Chatman stated that the shooting was discussed during a subsequent trip to Florida.[65] In his Amended Motion, Fowler claims that his trial attorney, had he known of these statements, "likely would have made different strategic choices in attacking the

---

[61] *Rosenberg v. U.S.*, 360 U.S. 367, 371 (1959).
[62] *See Riley v. State*, 496 A.2d 997, 1019 (Del. 1985).
[63] *U.S. v. Hill*, 976 F.2d 132, 142 (3d. Cir. 1992).
[64] D.I. 174, at 24-25.
[65] *Id.*, at 23-24.

credibility of the State's witnesses, specifically Chatman – the State's star witness and uncharged co-conspirator."[66] But, that is not what Mr. Collins affidavit actually says. The affidavit states only, "I believe Mr. Roop [Mr. Collins' co-counsel] and I would have been more effective in cross-examining the witnesses, particularly Brett Chatman, had we been provided with these detailed statements."[67] The Court finds Mr. Collins statement too lacking in specificity and too speculative to be helpful to Fowler's argument. In any event, information that merely enhances counsel's ability to conduct more effective cross-examinations is not new evidence creating a substantial inference of actual innocence.

17.   As to the specific statements, Fowler knew that Chatman and the other witnesses had been drinking and in some cases taking Xanex on the night of the July 2nd shooting. The comment that they were "hammered" as opposed to some other level of intoxication is insignificant. Typically, a witness' degree of intoxication is a factor in the witness' ability to observe and recall events. The key testimony each of the witnesses with Fowler provided was that Fowler was the shooter. Here, however, the witnesses all knew Fowler well, and hence, their ability to identify him as the shooter was not affected by their degree of intoxication. Fowler also knew, as Chatman testified, that he had maintained some degree of contact with Fowler after the July 2nd shooting, including travelling to Florida with him. Similarly,

---

[66] *Id.,* at 24.
[67] D.I. 180.

17

much, if not all, of Chatman's statements concerning threats to himself and Duarte on July 31st was discussed in Chatman's and Duarte's testimony. Finally, Chatman and others testified about discussions of the shooting in Florida.

18.     With regard to Jonathan Duarte, Fowler identifies the following statements in his undisclosed statement; 1) Duarte did not give a full statement to police concerning the stabbing of Fowler's brother; 2) Duarte admitted that he deleted several voicemails from Fowler from his telephone; 3) Duarte said that Chatman told him that Fowler had pulled a gun on him (Chatman) when Fowler picked them up prior to the July 31st shooting; 4) Duarte provided information that undermined Chatman's credibility and showed that Chatman was complicit with and spurred Fowler on to commit the crimes; and 5) Duarte admitted to going to Florida voluntarily.[68] Fowler does not address in his Amended Motion with any particularity why these statements were significant or how the State's failure to supply them harmed him. They seem to be simply statements of which Fowler claims to have been unaware, untethered to any explanation why they are significant. For that reason, Fowler's complaint about the Duarte statement fails.

19.     Additionally, the State correctly points out that Fowler knew that Duarte did not give a complete statement to the police concerning the stabbing incident, because: 1) Duarte said in an August 2011 statement that was provided to Fowler prior to trial that he did not tell the police much about the stabbing; and 2) Duarte's

---

[68]D.I 174, at 23.

18

statement to the police about that incident was provided to Fowler before trial.[69] The State also correctly points out that Fowler was aware that Duarte had deleted some information from his telephone.[70] Absent some explanation of how knowledge that Duarte had deleted voicemails from Fowler would have helped Fowler, the Court is hard pressed to give this statement any weight. Similarly, Duarte's remarks about Chatman telling him that Fowler had pulled a gun on him and that Duarte went to Florida voluntarily are without contextual significance. Finally, Fowler's assertion that Duarte provided information that seriously undermined Chatman's credibility and shows he was complicit in Fowler's crimes is too vague to credit. Moreover, evidence that Chatman was complicit in Fowler's crimes hardly exonerates Fowler.

20.    With respect to the undisclosed statement of Emily Godek, Fowler cites the following: 1) Fowler did not threaten Chatman in Florida when Chatman spoke to Det. Eckerd on the telephone; 2) Fowler told her that he told Chatman and Duarte that they did not have to go with him to 49 Martindale Drive on July 31st; 3) after Fowler was arrested, she voluntarily visited him in prison, exchanged letters with him, and spoke with him on the telephone; and 4) she was aware that Fowler and Duarte met and hung out after returning from Florida.[71] Why any of these four statements is significant is not explained. Moreover, the latter two were clearly matters within Fowler's knowledge. The statement that Fowler told her that he told

---

[69] D.I. 182, at 22.
[70] *Id.*
[71] D.I. 174, at 22-23.

19

Chatman and Duarte they did not have to go with him to 49 Martindale Drive is of dubious exculpatory value inasmuch as in tends to place Fowler at the crime scene with Chatman and Duarte. Finally, whether Fowler threatened Chatman when he was on the telephone to Det. Eckerd, apart from being a matter of opinion, is not materially probative of the core issue in the case – whether Fowler was responsible for the shootings.

21.     Given all of that, it is clear to the Court that the information in the undisclosed statements was either known to Fowler, cumulative of information known to Fowler, or revealed in trial testimony. Further, Fowler has not articulated with any particularity how timely production of these statements would have enhanced the effectiveness of his cross-examinations of the witnesses or otherwise affected his substantial rights. In other words, the Court finds that one of the two most significant *Hughes* factors in this case – the centrality of the violation to the case - strongly favors the State.

22.     The next *Hughes* factor the Court addresses is the closeness of the case. The Court recognizes that it is at an obvious disadvantage, because a different judge presided at the trial. In a case turning in large measure on the credibility of the witnesses, the Court has no ability to assess a significant factor in determining credibility – the witness' demeanor on the witness stand. Nonetheless, the Court does not believe that the case was close. Four people, all of whom, to a greater or lesser degree were Fowler's friends or acquaintances testified that he was the shooter

– Chatman, Tami Boyd and Danielle Maslin in the July 2nd shooting and Chatman and Duarte in the July 31st shooting. Notably, there were no undisclosed statements of Boyd and Maslin. Emily Godek, a fifth friend of Fowler's and his girlfriend at the time of the incident, testified that he confessed his involvement in the July 31st incident to her. Other evidence, such as the green and white striped polo shirt and the silver or gold Honda, implicated him as well. Moreover, the motive evidence, particularly with regard the stabbing of Fowler's brother just prior to the July 31st incident, was strong. Finally, the fact that ballistic evidence linked the same weapon to both incidents makes the evidence of Fowler's guilt in each separate incident mutually reinforcing. For those reasons, the Court finds that this second significant *Hughes* factor – the closeness of the case – also strongly favors the State.

23. The Court next turns to the last *Hughes* factor – mitigation efforts. This factor favors Fowler for the obvious reason that no steps were taken to mitigate the *Jencks* violation. The Court gives this factor little weight in the overall harmless error analysis, however. The information in the undisclosed statements was relatively insignificant to the central issue in the case which was the identification of Fowler as the shooter. Furthermore, the State's case was strong. Nothing in the undisclosed statements could or would have enhanced the cross-examinations of the witnesses to such a degree as to have influenced the jury's verdicts.

24. Lastly, the Court declines Fowler's invitation to conduct an evidentiary hearing. The Court has before it the entire trial transcript as well as the transcripts

21

of the undisclosed statements and deems that a sufficient record upon which to base its decision.

Therefore, for the foregoing reasons, the Court finds that Fowler was not deprived of his right to effective assistance of counsel on appeal. The Court further finds that the State's violation of its obligations under *Jencks* was both inadvertent and harmless beyond a reasonable doubt. Accordingly, Defendant's Amended Motion for Postconviction Relief is **DENIED**.


**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

oc:    Prothonotary
cc:    Investigative Services

22