UNITED STATES of America

v.

PERDOMO, Juan John Doe
a/k/a "Juan,"

Juan Perdomo, Appellant.

No. 90–3176.

United States Court of Appeals,
Third Circuit.

Argued Dec. 5, 1990.

Decided April 11, 1991.

Richard K. Harris (Argued), Office of U.S. Atty., Charlotte Amalie, St. Thomas, Virgin Islands, for appellee.

James R. Holloway (Argued), Office of Federal Public Defender, Christiansted, Saint Croix, Virgin Islands, for appellant.

Before GREENBERG, COWEN and HIGGINBOTHAM,* Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant, Juan Perdomo, was convicted on cocaine possession charges in the District Court of the Virgin Islands. He appeals the denial of his motion for a judgment of acquittal or, in the alternative, a new trial. He asserts that his Fifth Amendment right to due process as set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) was denied when the prosecutor, an Assistant United States Attorney, failed to provide his defense counsel with favorable and material information regarding the prior criminal record of the prosecution's main witness. We agree that the prosecution's failure to disclose constituted a *Brady* violation and will vacate the district court's order which denied appellant's motion for a judgment of acquittal, or in the alternative, a new trial.[1]

## I. Background

On October 17, 1989, Juan Perdomo was arrested in St. Thomas by Narcotics Strike Force officers and charged in connection with cocaine that he was alleged to have sold, approximately one month earlier, to a paid government informant, Hector Soto. At trial Soto, recounted the facts of the drug transaction and established that Perdomo had sold him "an eighth" (2½ to 3½ grams) of cocaine for $225. (App. at 121, 146). It was also established by other testimony that the transaction occurred in the area between "Smitty's" Bar and Perdomo's apartment building which is approximately 397 feet from the Evelyn Marcelli Elementary School. (App. at 126–29). On November 29, 1989, the jury found Perdomo guilty of three offenses as charged: possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); and distribution of cocaine within 1000 feet of a school in violation of 21 U.S.C. § 845a(a).

Prior to trial, defense counsel submitted two written requests for any information relating to the criminal background of any prosecution witnesses. The prosecution responded that its key witness, the government informant Hector Soto, did *not* have a criminal record. (App. at 23). On the day following the return of the jury verdict, it

---

* Honorable A. Leon Higginbotham, Jr., was Chief Judge at the time of oral argument in the above case but assumed Senior Judge status on February 1, 1991.

1. We, of course, recognize that there is a more rigid standard for the granting of a judgment of acquittal, *see United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.1987), than the granting of a motion for a new trial and, at this stage, we are not inclined to grant the motion for the judgment of acquittal. But, in view of the fact that defendant has already served his minimum sentence, *see infra* n. 4, we will leave it to the trial judge and the United States Attorney to decide how to correct the injustice that Mr. Perdomo has sustained.

came to light that Soto had a prior arrest and conviction record.[2] (App. at 14–15). Following the discovery that a criminal record existed, appellant filed a motion for a judgment of acquittal or, in the alternative, for a new trial on December 20, 1989. He argued that the prosecutor's failure to disclose this information denied him his Fifth Amendment right to due process of law as guaranteed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) because the information was not available to defense counsel at trial. These allegations were considered by the district court at Perdomo's sentencing hearing on February 7, 1990.[3] During the hearing, the government argued that a National Crime Information Center ("NCIC") computer check conducted prior to trial had not turned up a criminal record and therefore, the prosecutor could not be responsible for withholding the information. Throughout the discussion, the district court made several findings and subsequently ruled from the bench. The court found, *inter alia*, that the jury had an opportunity to evaluate the informant's credibility from other damaging testimony that had been elicited during trial concerning Soto's receipt of government payments and his prior drug usage. (App. at 27). The court also found that the Government had not suppressed Soto's prior record and that the prosecution's failure to learn of the record could

not "in any way [be] determined [a] material suppression of exculpatory evidence." (App. at 30). In addition, the court charged the Office of the Public Defender with knowledge of Soto's criminal record because that office had represented Soto in a prior criminal proceeding. Consequently, the court found that no *Brady* violation had occurred and denied the motion. (App. at 29, 31). Appellant was sentenced to 14 months imprisonment and six years supervised release. (App. at 54).[4]

## II. Discussion

 We turn now to review appellant's argument that the trial court abused its discretion when it denied the motion for a new trial. Ordinarily we review a district court's ruling on a motion for new trial on the basis of newly discovered evidence for abuse of discretion. *See e.g., Government of Virgin Islands v. Lima*, 774 F.2d 1245 (3d Cir.1985). Because a *Brady* claim presents questions of law as well as questions of fact, we will conduct a de novo review of the district court's conclusions of law as well as a "clearly erroneous" review of any findings of fact where appropriate. *See e.g., Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir.1987).

Appellant argues that the prosecution's failure to provide defendant with information regarding the government informant's

2. The exact way in which this information was discovered is unclear. At the sentencing hearing, the government alleged that the information first came to light as a result of a records search by two members of the Public Defender's Office in preparation for another case. While searching their files, the public defenders found that their office had represented the informant in an earlier case that resulted in a conviction for burglary. (Govt.Br. at 12 citing A–24, A–29).

MR. HARRIS: * * * * The way that it came to light and what defense counsel is not telling to the court is that it came to light because Mr. McKelvin at the Public Defender's Office knew about it and asked Attorney Peter Mabe of my office, isn't this the guy that was convicted over in St. Croix, and upon that information being given with that specific point of reference, an inquiry was made and it was determined [it was] in fact the same Hector Soto.

(App. at 24). Appellant, on the other hand, argued that Mr. McKelvin was informed by an

Assistant United States Attorney, Mr. Mabe, about the informant's record.

3. At the time of the hearing all of the facts regarding Mr. Soto's criminal background had not been discovered. Subsequent to the sentencing, further investigation revealed that Soto had been arrested five times and had been convicted of burglary and cruelty to animals. As a result of that conviction, he was ordered to have psychiatric evaluation and treatment. (Perdomo Br. at 15).

4. The instant case is a tragic example of justice delayed. Perdomo was in custody from April 11, 1990 to November 5, 1990. By the time that his appeal was argued before this court, on December 5, 1990, he had already served his sentence and been released from custody. The appeal is, of course, not moot because Perdomo has a conviction of record and is still subject to up to six years of supervised release.

prior criminal record constituted a violation of his right to due process under *Brady v. Maryland*. *Brady* provides that the suppression by the prosecution of evidence favorable to an accused, upon request by the defense, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196. This rule was modified in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) to require a prosecutor to disclose exculpatory evidence even when there has not been a request for the information by the defense.

■ A valid *Brady* complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The government challenges the first element, insisting that it could not suppress or withhold evidence that was unknown or unavailable to it. According to the Assistant U.S. Attorney, he conducted an NCIC computer search for criminal background information on Hector Soto which turned up no criminal records. Appellant argues, on the other hand, that the prosecutor's decision not to request a Virgin Islands criminal history check means that the information was available to the *prosecution team* and was withheld or suppressed from the defense. In considering a potential *Brady* violation and considering whether the prosecution is responsible, the Fifth Circuit has refused "to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel." *See United States v. Antone*, 603 F.2d 566 (5th Cir.1979). Appellant's argument is that our inquiry into the prosecution's knowledge need not stop at the prosecutor himself but should also extend to whether any of the Narcotics Strike Force police officers knew of Soto's criminal background. We agree that a court's inquiry should not be limited to only the prosecutor's complicity and adopt the Fifth Circuit's approach.

## A. Suppression of Evidence

■ We agree with the appellant that the prosecution's failure to conduct a search of local Virgin Islands records to verify Soto's criminal background meets the first element of a valid *Brady* complaint. It is well accepted that a prosecutor's lack of knowledge does not render information unknown for *Brady* purposes. The Fifth Circuit has spoken the most often on this issue and has declined to excuse non-disclosure in instances where the prosecution has not sought out information readily available to it. *See United States v. Auten*, 632 F.2d 478, 481 (5th Cir.1980). In *Auten*, the appellant argued that his motion for a new trial should have been granted because the prosecution failed to disclose that one of its key witnesses had been convicted more than once. The prosecution argued that it did not withhold or suppress evidence because the information was unknown to it. The prosecutor had chosen not to run an NCIC check on the witness because of the shortness of time. The court held that the prosecutor's lack of knowledge was not an excuse for a *Brady* violation. "In the interests of inherent fairness," the prosecution is obligated to produce certain evidence actually or constructively in its possession or accessible to it. *Auten*, 632 F.2d at 481 (quoting *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975)). To do otherwise would be "inviting and placing a premium on conduct unworthy of representatives of the United States Government." *Id.*

■ We agree with and adopt the reasoning of the Fifth Circuit. In the instant case, the prosecutor's argument that he did not have any knowledge of Hector Soto's criminal history is without merit. The prosecutor was obliged to produce information regarding Soto's background because such information was available to him. In view of the fact that local Virgin Islands arrests and convictions are not recorded in the NCIC database, (*see* Perdomo Br. at 10) it is apparent to this court that the computer search was merely a token effort. Such an ineffectual attempt to verify a key pros-

ecution witness' criminal history amounted to conduct unworthy of the United States Attorney's Office.

The following statement made by the district court judge during the sentencing hearing indicates that the court may have been under the impression that local records of crimes committed in the Virgin Islands are not readily available to the United States Attorneys Office:

> THE COURT: If an NCIC check does not demonstrate there was a prior criminal conviction, then let the Third Circuit say that U.S. Attorneys and [the] U.S. Attorney's office has to do more, they have to go through the sewage of San Juan and sewage of St. Thomas to see if there are some other files there. I'm not going to require that. (App. at 31).

We view the U.S. Attorney's obligation somewhat differently than did the district court. *Auten* also stands for the proposition that non-disclosure is inexcusable where the prosecution has not sought out information readily available to it. *Id. Auten* and other cases indicate that the availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state. For example, in *United States v. Deutsch*, 475 F.2d 55 (5th Cir.1973) *overruled on other grounds, United States v. Henry*, 749 F.2d 203 (5th Cir.1984), the Fifth Circuit deemed the prosecution in possession of information requested by the defendant where the information sought was in the files of the United States Postal Service. Similarly, in *Martinez v. Wainwright*, 621 F.2d 184, 186–87 (5th Cir.1980) a *Brady* violation was found where the state prosecutor was unaware that the FBI rap sheet was in the possession of the medical examiner. Accordingly, the criminal background information contained in local Virgin Islands records was information that was "readily available" to the prosecution. We conclude, therefore, that the district court was in error, as a matter of law, for finding that the prosecution's failure to learn and disclose Soto's record was not a suppression of exculpatory evidence.

**B. Favorable and Material Evidence**

 The second and third elements of a valid *Brady* complaint are that the information must have been favorable and material to the defense. *Moore v. Illinois*, 408 U.S. at 786, 92 S.Ct. at 2564. Appellant argues that the withheld information regarding Soto's criminal background was favorable to the defense and would have been material to the outcome at trial. We agree that the favorability of the evidence is unquestionable. Soto's undisclosed criminal record constitutes exculpatory evidence that the defense could have used to impeach Soto on cross-examination.

We also conclude that the evidence was material to the defense. *See Landano v. Rafferty*, 856 F.2d 569, 573 (3d Cir.1988). The Supreme Court has explained that "implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 105, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976); *accord United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985) (plurality opinion). A defendant is entitled to a new trial where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is [defined as] a probability sufficient to undermine confidence in the outcome." *Bagley*, 105 S.Ct. at 3383. This court has recognized that the *Bagley* inquiry requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation. *Gov't of Virgin Islands v. Martinez*, 780 F.2d 302, 306 (3d Cir.1985) (quoting *Bagley*, 105 S.Ct. at 3384).

Appellant has presented a compelling argument that the withheld information was material. Had the evidence been disclosed, the result of the proceeding might have been different. Soto appears to have had several contacts with the criminal justice system. He has had, at least, two prior convictions and has been subjected to a

psychiatric exam. (App. at 221–227). Such information would have been critical in presenting the witness' mental state, demeanor and behavior to the jury, and in questioning the witness' credibility. In the instant case, defense counsel had the rare opportunity of being able to proffer, on appeal, a case that demonstrates exactly how the information might have been utilized in Perdomo's defense. In a case arising out of an unrelated incident, but with a factual setting quite similar to the case at hand, Jose Rosario was acquitted of charges arising from another Narcotics Strike Force operation that involved the same Hector Soto. At Mr. Rosario's trial, Soto testified as the key prosecution witness. The significant difference in the Rosario case was that, this time, the defense was provided with Soto's criminal history. Our review of the excerpts from the Rosario trial transcript reaffirms our judgment that the information concerning Soto's criminal background would have contributed significantly to the outcome in Perdomo's trial. Seldom have appellate judges seen such persuasive evidence that the availability of information on a prior conviction could have made a difference. We emphasize, however, that we simply find the information from the Rosario trial persuasive. We do not mean to suggest that in order to establish that undisclosed information is material, an appellant must offer proof of how the information was actually utilized in a subsequent trial. The inquiry for the court is simply whether there is a reasonable probability that the outcome of the trial would have been different. We find that a strong probability exists here.

The district court did not apply the correct standard for measuring materiality at the sentencing hearing. The court reasoned that the undisclosed information was not material because the jury had ample opportunity to evaluate Soto's credibility due to other damaging testimony that had been elicited concerning the government payments to Soto and his prior drug usage. (App. at 27). Whether or not the jury has had an opportunity to consider other impeachment evidence is not the correct standard for determining materiality of undisclosed information. It is well-established that "impeachment evidence as well as exculpatory evidence falls within the *Brady* rule." *Bagley*, 105 S.Ct. at 3380 (citing *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)). "Such evidence is 'evidence favorable [and material] to the accused' [citations omitted] so that, if *disclosed and used effectively*, it may make the difference between conviction and acquittal." *Id.* (emphasis added) In addition, a defendant is not required to show that evidence, if disclosed, probably would have resulted in acquittal. The Supreme Court has offered the following explanation:

> [i]f the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice. *Bagley*, 105 S.Ct. at 3383.

The question is, therefore, whether the testimony that the defense would have been able to elicit would have been different had counsel known of Soto's criminal record beforehand. In *Bagley*, the Supreme Court found that there was a significant likelihood that the prosecutor's negative response to the motion for discovery misleadingly induced defense counsel to believe that the two key witnesses could not be impeached on the basis of bias or interest arising from inducements offered by the Government. *Bagley*, 105 S.Ct. at 3384. Here, there is also a significant likelihood that the prosecutor's response to the defense's request for criminal background information induced defense counsel to believe that Soto could not be impeached because counsel assumed that he had no prior criminal record. In *Bagley*, the case was remanded for a determination of whether there was a reasonable probability that had the government's inducement to the witnesses been disclosed to the defense, the result of the trial would have been different. In view of the extant circumstances

here, a remand is also required for a similar determination.

## C. Alleged Defense Knowledge of Undisclosed Information

 The district court decided, not only that the prosecutor had not committed a *Brady* violation, but, also that defense counsel, a member of the Office of the Public Defender, was charged with the knowledge of Soto's criminal record because a *different* person in the Public Defender's office had represented Soto on an arrest that had resulted in a conviction. (App. at 29, 31). The court cited no authority in support of this holding. It is true that *Brady* does not oblige the government to provide defendants with evidence that they could obtain from other sources by exercising reasonable diligence. *United States v. McKenzie,* 768 F.2d 602 (5th Cir. 1985) (no *Brady* violation for prosecution's failure to turn over videotape, where defendants were aware of its existence before trial, did not move for discovery, and could have subpoenaed a witness' attorney for it). Evidence is not considered to be suppressed if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence. *United States v. Torres,* 719 F.2d 549 (2d Cir.1983); *see also United States v. Brown,* 582 F.2d 197 (2d Cir.1978) (no *Brady* violation where defense counsel was made aware of witness' contradictory statements shortly after the opening of trial and was able to use him as a witness on defense's behalf). Notwithstanding this particular branch of the *Brady* doctrine, the facts of the instant case do not even remotely suggest that defense counsel had any knowledge or, more importantly, any responsibility to be aware of the witness' criminal record. It is untenable to suggest that, in order to obtain impeachment evidence on behalf of a client, a public defender is, in any way, obligated to check the total list of persons who have been served by the agency to ascertain whether a prospective witness was a former client.[5] Just as a judge is not imputed with the knowledge of another judge in a

different case, there is no basis to demand a greater level of omniscience of co-workers in a public defender's office. Moreover, the prosecution, not the defense, is equipped with the resources to accurately and comprehensively verify a witness' criminal background. Therefore, we find the district court's allocation of the burden to the Office of the Public Defender incorrect as a matter of law and as a matter of fairness.

## D. Evidentiary Hearing

 Although appellant has made a very persuasive showing that a *Brady* violation did occur, we will nevertheless remand for an evidentiary hearing. We think that there are several factual questions that should be determined before the issue can finally be resolved. This court has previously recognized that "where a factual question is raised as to whether a *Brady* violation occurred, the defendant is 'entitled to have it determined by the district court in a hearing appropriate to the factual inquiry.' " *Gov't of Virgin Islands v. Martinez,* 780 F.2d 302 (3d Cir.1985) (quoting *United States v. Alexander,* 748 F.2d 185, 193 (4th Cir.1984)). In *Martinez,* after considering an appeal of a conviction for first degree murder, we remanded for an evidentiary hearing where evidence that defendant sought to have disclosed presented a reasonable probability that a jury could have found that he acted in self-defense. We reasoned:

> [w]here the submission of written affidavits raises genuine issues of material fact and where, as here, the *Brady* claims are neither frivolous nor palpably incredible, an evidentiary hearing should be conducted. *Id.* (quoting *United States v. Dansker,* 565 F.2d 1262 (3d Cir.1977)).

In the case at hand, the district court's consideration of the motion for a new trial during the sentencing hearing did not rise to the level of an evidentiary hearing that is required when a credible *Brady* claim has been raised. Certain pieces of key information were not before the district court or were not adequately considered at

---

5. The Office of the Public Defender represented Hector Soto in 1979. (Perdomo Br. at 11).

the time of hearing. For example, Soto's complete criminal record was not considered because the criminal history had not been compiled at the time that the hearing was conducted; appellant has raised questions as to the complicity of the Narcotics Strike Force agents in a possible cover-up of Soto's criminal background; the effect of the undisclosed information on the outcome at trial was never actually considered; and appellant asserts that there is no evidence, beyond the prosecution's statements at the sentencing hearing, as to whether an NCIC search was, in fact, actually conducted. We agree with appellant that an evidentiary hearing is necessary to resolve these unanswered questions. Once these questions are resolved, the court will be able to consider the proper measures to be taken to remedy the violation of Perdomo's right to due process of law including the award of a new trial or other appropriate relief.

### III. Conclusion

On the arguments before us, we conclude that the appellant has presented an undisputable argument that a *Brady* violation occurred. Accordingly, the judgment of the trial court denying a motion for a new trial and denying the motion for a judgment of acquittal will be vacated and the case remanded for further proceedings in accordance with this opinion.