# UNITED STATES OF AMERICA

## v.

## THEODORE JOSEPH, Appellant

# UNITED STATES OF AMERICA

## v.

## LEROY DAVIS, Appellant

[996 F.2d 36]

Nos. 92-7409; 92-7427

United States Court of Appeals
for the Third Circuit

June 15, 1993

KWAME O. MOTILEWA (Argued) (MOTILEWA & PERCELL), Charlotte Amalie, St. Thomas, V.I., *for Theodore Joseph*

ROBERT L. KING (Argued), Charlotte Amalie, St. Thomas, V.I., *for Leroy Davis*

H. PETER MABE, United States Attorney, Assistant U.S. Attorney; KIM L. CHISHOLM (Argued), Special Assistant U.S. Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

BEFORE: GREENBERG, SCIRICA, and GARTH, *Circuit Judges*

## OPINION OF THE COURT

GREENBERG, *Circuit Judge*

These appeals cause us to consider the circumstances in which Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), requires pros-

ecutors to search their files for exculpatory information. Appellants Theodore Joseph and Leroy Davis maintain that they were denied due process of law because the prosecutor at their criminal trial did not disclose exculpatory information that was in the file of an unrelated case which he also was prosecuting. The appellants concede that they made only a general request for Brady materials and therefore did not ask specifically for the type of information which would have included the undisclosed materials. Nevertheless, they urge that the prosecutor should have supplied them with the materials. We reject appellants' contention because they were obliged to establish that the prosecutor had actual knowledge of the Brady materials or that the prosecutor should have known of the existence of such materials in the related case. Neither showing was made.

## I. BACKGROUND

The appellants raise the Brady issue on an appeal from a July 28, 1992 order of the district court denying their motions for judgment of acquittal or a new trial.[1] While the district court's opinion on those motions and our opinion dismissing the appellants' earlier premature appeals describe the background of this case, see United States v. Joseph, 800 F. Supp. 1303 (D.V.I. 1992); United States v. Davis, 924 F.2d 501 (3d Cir. 1991), we nevertheless summarize the relevant facts.[2]

---

[1] The appellants also appeal from the judgments of conviction and sentence.

[2] The appellants make additional contentions not requiring full discussion. They urge that the trial procedure violated their due process rights because a deputy marshal testified at their trial after serving as a custodian for the jury. We reject this argument for the marshal only testified to clarify that he did not participate in the raid and thereafter was relieved of his jury responsibilities. Thus, this case is not controlled by Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546 (1965), on which the appellants rely. Turner involved critical testimony by two of the deputy sheriffs in charge of a sequestered jury so that, as the Court explained, "the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality." 379 U.S. at 473, 85 S.Ct. 550. That was surely not the situation here. Indeed, a third defendant in the case, Vernon Nesbitt, was acquitted.

Joseph also urges that: (1) the procecutor's failure to turn over the unrequested exculpatory information violated his Sixth Amendment right to confront his accusers as well as the Jencks Act; (2) there was insufficient evidence

Joseph, Davis, and Vernon Nesbitt were arrested on September 6, 1989, at or about 8:00 p.m., when the Narcotics Strike Force of the Virgin Islands Department of Justice, with help from the Virgin Islands Police Department, raided the Quality Grain Feed Shop on St. Thomas. During the raid, the agents seized two weapons and crack cocaine. Earlier that evening, Narcotics Strike Force Agent Lawrence Olive surveyed the feed shop from a "gut" across the street. Olive testified that he began his surveillance between 6:00 and 6:30 p.m. During his surveillance, Olive observed what he thought were two drug transactions involving Joseph, and one involving Davis. When Olive saw Joseph and Davis heading toward their vehicles, he radioed Narcotics Strike Force Agent Carl Charleswell for assistance. Charleswell then arrived at the scene with several officers from the Virgin Islands Police Department, and the raid ensued.

On September 11, 1989, the United States Attorney filed an information in the district court charging Joseph, Davis, and Nesbitt with the following offenses: (1) conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846; (2) possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (3) use of a firearm, a submachine gun, during and in relation to a drug crime in violation of 18 U.S.C. § 924(c); and (4) use of a firearm, a semiautomatic pistol, during and in relation to a drug crime in violation of 18 U.S.C. § 924(c). At a four-day jury trial between December 11 and December 14, 1989, Joseph and Davis were found guilty on all four counts while Nesbitt was acquitted completely.

On December 19, 1989, Joseph moved for a judgment of acquittal or a new trial. Then in January 1990 Joseph's attorney discovered reports and affidavits of Agents Olive and Charleswell made in connection with an unrelated case against Carlton Lee which placed them on the other side of St. Thomas between 6:00 and 6:30 p.m. on the night Joseph and Davis were arrested. Accordingly, at the scheduled sentencing hearing on March 7, 1990, the appellants moved for a continuance and for an evidentiary hearing because of a possible Brady violation. Despite the pending motions, the dis-

---

to convict him on the drug charges; (3) there was insufficient evidence to convict him on the weapons charges; and (4) the trial court erred in sentencing him based on the weapons charges. We have reviewed each of these contentions and find them lacking in merit.

trict court sentenced Joseph and Davis who then appealed to this court. We dismissed their appeals, explaining that we lacked jurisdiction because of the pending motions in the district court. See United States v. Davis, 924 F.2d at 506.

On November 19 and 20, 1991, the district court held an evidentiary hearing to consider the material discovered by Joseph's attorney. At the hearing, the Acting Director of the Narcotics Strike Force, Rupert Tuckett, testified that Olive and Charleswell did not begin their surveillance of the feed shop until 7:00 or 7:15 p.m., following the conclusion of their investigation of Carlton Lee. This testimony was consistent with that of several defense witnesses who testified at trial that Joseph was at places other than the feed shop until after 7:00 p.m. But the critical evidence supplied at the hearing came from the prosecutor for he explained that although he prosecuted both appellants' and Lee's cases, he was unaware of the conflict between Olive's trial testimony and the reports and affidavits in the Lee case until after the jury returned the verdicts in the case against Joseph, Davis, and Nesbitt. The district court believed the prosecutor's testimony, finding that he did not have actual knowledge of the conflict in the times when the appellants were on trial. 800 F. Supp. at 1308. Accordingly, it denied the appellants' motions for a new trial. They then appealed from the judgments of conviction and sentence and the order denying their motions for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291.[3]

## II. DISCUSSION

### A. *General Brady considerations*

■ The appellants maintain that by failing to disclose Charleswell's and Olive's reports and affidavits in the Lee case, the prosecution violated their due process rights as recognized in Brady v. Maryland and its progeny.[4] Thus, they assert that they are entitled

---

[3] The district court also found that even assuming there had been a Brady violation a new trial was not required. Because we hold that there was no suppression or withholding of evidence and thus that there was not a Brady violation, we do not consider this point nor do we consider whether the other elements of a Brady violation were established.

[4] The appellants claim that this information would have undermined the credibility of the government's key witnesses, thereby triggering the prosecu-

to a new trial. As noted, the district court rejected this argument, finding that the prosecution had not suppressed the material. Ordinarily we review a denial of a motion for a new trial under an abuse of discretion standard. However, when a Brady violation is alleged issues of law and fact usually are presented. In that circumstance, we review the district court's legal conclusions on a de novo basis and its factual findings under the clearly erroneous standard. United States v. Hill, 976 F.2d 132, 134 (3d Cir. 1992); United States v. Perdomo, 929 F.2d 967, 969 (3d Cir. 1991).

■ Brady requires that the prosecution turn over evidence which is favorable and material to the defense. Perdomo, 929 F.2d at 970 (citing Moore v. Illinois, 408 U.S. 786, 794-95, 92 S.Ct. 2562, 2568 (1972)). Usually it is not difficult for a prosecutor to fulfill his obligations under Brady as the exculpatory information will have been developed in the case being prosecuted, e.g., a witness at a crime who suggests to the investigating police that he could not identify the defendant as the perpetrator. Concomitantly, in such cases a court does not have a difficult time determining whether the prosecutor suppressed or withheld Brady material.

■ But a court's task becomes more complicated when exculpatory information is available to the prosecution but is not within in its actual knowledge in the context of the particular case in which a defendant asserts there has been a Brady violation and the existence of the information is understandably unknown by the prosecutor in that context. There may, after all, be many sources of exculpatory material. In the circumstance when the prosecution either lacks actual knowledge of the material in the context of the case being prosecuted, or had no reason to know of it in that context, the Supreme Court has made it clear that the controlling test of whether there has been a violation is objective, not dependent in any way on prosecutorial bad faith. See United States v. Brooks, 966 F.2d 1500, 1502 (D.C. Cir. 1992) (citing Brady, 373 U.S. at 87, 83 S.Ct. at 2567-68). This is such a case.

■ There is no dispute that the prosecutor did not supply the appellants with the reports and affidavits from the Lee case. In Perdomo, we held that "the prosecution is obligated to produce cer-

tion's duty to disclose it. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766 (1972); United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984).

tain evidence actually or constructively in its possession or accessible to it." 929 F.2d at 970. We construe the term "constructive possession" to mean that although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence. Accordingly, we consider whether the prosecutor knew or should have known of the materials even though they were developed in another case.

B. *Actual knowledge of the exculpatory materials*

 The appellants argue that the prosecutor had actual knowledge of the reports and affidavits in the Lee case because he was the prosecutor in that case as well. Thus, in their view the prosecutor should have supplied the reports and affidavits to them even though they were not developed in the appellants' case. The difficulty with this argument is that, as we have noted, following an evidentiary hearing the district court found that the prosecutor lacked actual knowledge of the inconsistency in the times between Olive's trial testimony and the Lee materials.

We cannot reject this finding for the evidence supports it fully and thus it cannot be clearly erroneous. The prosecutor testified that he was not aware of the overlapping times until after the appellants' trial. Furthermore, it cannot be disputed reasonably that the timing of the observations in this case was not important inasmuch as the appellants were arrested at the scene of the crime and weapons and crack were seized then. Moreover, while Olive testified that he saw what appeared to be drug transactions at the feed shop, the appellants were not charged with distribution offenses. Therefore the timing of Olive's observation on the appellants' case was not significant because a possessory offense unlike, a distribution offense, does not involve a discrete undertaking at a particular time.

The difference between the two offenses suggests that it was reasonable for the prosecutor to have paid little attention to the times involved in the Lee case. The time periods involved in Lee would not have jogged the prosecutor's recollection of the time when the surveillance of the feed shop was conducted because the particular times were just not an important element in proving that Joseph and Davis merely *possessed* a controlled substance rather than *distributed* that substance to others. Finally, we note that because Lee pleaded guilty, the prosecutor had no need and would have had no

occasion to become familiar with all of the information in the Lee file.

## C. *Constructive knowledge of the Brady materials*

Having rejected the appellants' claim that the prosecutor had actual knowledge of the materials in the Lee file, we now consider their constructive knowledge claim in light of United States v. Perdomo, as we earlier defined the term "constructive knowledge" i.e., should the prosecutor have known of the existence of material in the Lee file which conflicted with Agent Olive's testimony in the appellants' trial. In Perdomo, which involved a Virgin Islands prosecution, the defense attorney had made a specific request for any information relating to the criminal background of any of the prosecution's witnesses. The prosecution incorrectly responded that its key witness did not have a criminal record. It sought to avoid the consequence of its error, however, by arguing that it could not be responsible for withholding Brady information because it had conducted a National Crime Information Center check which did not reveal the criminal record. We rejected this argument, as we held that the prosecution should have known about the prior arrest and conviction because the information was "readily available" to it. 929 F.2d at 970.

Of course, the linchpin of Perdomo was that the information regarding the witness's record was contained in the local Virgin Islands files which are not recorded in the National Crime Information Center database. Id. Thus, by searching only that database, the prosecutors in Perdomo ignored the very records likely to reveal germane information. In this unique circumstance we charged the prosecutor with constructive knowledge of the witness's criminal record. We did so because we were unwilling to allow the prosecution to avoid its Brady obligations by failing to take the minimal steps necessary to acquire the requested information. Thus, we implicitly held that the prosecutor's actions were objectively unreasonable in that the Perdomo prosecutor should have known of the requested information.

Yet this case is very different than Perdomo. Significantly, the appellants concede that they did not make a request for specific information of the type in the Lee file. Therefore, unlike the defendant in Perdomo, the appellants did not direct the prosecutor's attention toward the type of information they were seeking.

Accordingly, in this case it would have been unreasonable to expect the prosecutor to search all of the unrelated files in his office to look for exculpatory material. While the appellants discount the burden of that search by arguing that their cases and the Lee case were prosecuted simultaneously by the same prosecutor, the true measure of a prosecutor's Brady obligation is whether he knew or should have known of the exculpatory material. The circumstance that the prosecutor was the same in both cases is significant only in determining whether the prosecutor had actual knowledge of the Brady material or should have known of its existence. But the district court held he had no such actual knowledge and, as we shall explain, we do not conclude that he should have known of its existence.

We will not interpret Brady to require prosecutors to search their unrelated files to exclude the possibility, however remote, that they contain exculpatory information. See Brooks, 966 F.2d at 1504 (noting that cases "sensibly warn against reliance on utter speculation"). Such a requirement would place an unreasonable burden on prosecutors for it is one thing to require honest searches, reasonable in scope, of unrelated files for specific identifiable information, but quite another to send prosecutors on open-ended fishing expeditions. Therefore, we hold that where a prosecutor has no actual knowledge or cause to know of the existence of Brady material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request for that information—specific in the sense that it explicitly identifies the desired material and is objectively limited in scope.[5] Here, however, the appellants who, as we have earlier observed, made no specific and identifiable request which was objectively limited in scope, have not developed a record which justifies charging the prosecutor with knowledge in this case with the materials from the Lee case. Accordingly, as the pros-

---

[5] Our holding is not to be understood as an invitation to resourceful attorneys to develop endless lists of requests for specific information. There must be, after all, a reasonable limit to the burden that can be placed on prosecutors. The Court of Appeals for the District of Columbia Circuit certainly recognized this in United States v. Brooks for it pointed out that the defendant "was not asking the U.S. Attorney's office to examine some sprawling mass of records." 966 F.2d at 1503. In fact, if a defendant makes enough specific requests they will equal a general request for exculpatory materials.

ecutor did not have actual knowledge of the Lee material in the context of appellants' case, there was no Brady violation.[6]

We note that our holding is supported by the opinion of the Court of Appeals for the District of Columbia Circuit in Brooks which dealt with a question similar to that which we faced in Perdomo. The Brooks court, like this court in Perdomo, held that the prosecution had a duty to search files "'closely aligned with the prosecution'" for possible exculpatory evidence, 966 F.2d at 1503 (quoting United States ex rel. Smith v. Fairman, 769 F.2d 386, 391 (7th Cir. 1985)). However, in reaching its conclusion, the Brooks court noted that the existence of such a duty depended on the circumstances such as the ease of the search and the probability that the search would turn up exculpatory information. See 966 F.2d at 1503-04. But Brooks dealt with a situation different than that in this case. In Brooks the defendant's request was quite specific as he asked for information relating to the death of a police officer who had testified against him at an earlier trial and whose transcribed testimony from that trial would be used against him at a retrial. Here the appellants' general request for Brady material certainly did not ask the prosecutor to make a search of reasonable scope for the appellants did not focus on the file or call the prosecutor's attention to the specific particulars of the information sought or where he could find the material.

## III. CONCLUSION

For the reasons stated, we will affirm the district court's order of July 28, 1992, denying the appellants' motions for a judgment of acquittal or a new trial and we will affirm the judgments of conviction and sentence.

---

[6] Indeed, in light of our independent review of the record in this case, nothing appears that could have informed the district court or that informs us that the prosecutor should have known of times testified to by the detectives in Lee or the significance of these times as they related to the arrest of Joseph and Davis.