UNITED STATES of America

v.

William "Wild Bill" HANKINS and John "Jersey John" Hepburn, Defendants.

Crim. A. No. 93–140.

United States District Court,
D. New Jersey.

Jan. 10, 1995.

Howard Wiener, Jane L. Myers, Asst. U.S. Attys., Newark, NJ, for plaintiff.

Steven D. Altman, Benedict & Altman, New Brunswick, NJ, for defendant William "Wild Bill" Hankins.

## OPINION

WOLIN, District Judge.

Before the Court is the motion of William Hankins for a new trial pursuant to Federal Rule of Criminal Procedure 33. Mr. Hankins' motion is based on the newly discovered affidavit of Barbara Lovett, a co-conspirator who testified on behalf of the government during the trial. This affidavit was submitted on May 9, 1993, in a civil forfeiture action for a 1989 Ford van. In this affidavit Barbara Lovett states she is the owner of the van and that "the van was never used to facilitate drug transactions in any way. Certainly, it was not done with my consent." (Lovett Affidavit, ¶ 8). However, in her proffer to the government, which was memorialized in a DEA Report, Barbara Lovett testified that she did use the van to pick up drugs. (DEA Report, ¶ 11). As set forth herein, the Court finds that the government violated its duty under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to search for and disclose this affidavit to the defense during the trial. However, the Court finds that this *Brady* violation does not undermine the Court's confidence in the jury's verdict so as to warrant a new trial. This affidavit is merely cumulative and impeaching evidence.

## BACKGROUND

Defendant Hankins was convicted by jury on February 1, 1994, of conspiracy to possess and distribute methamphetamine in violation of 21 U.S.C. § 846. Defendant moved for a new trial on the ground that the prosecution violated his *Brady* obligation by failing to disclose the affidavit of Barbara Lovett.

1. Defendants requested "[s]tatements of persons or memoranda or recordings of any oral statement of any person whether or not made to an agent of the Government." This request is spe-

## DISCUSSION

### I. Brady Violation

Under *Brady* and its progeny, the government has a duty to turn over evidence that is favorable to the defendant, including information that the defendant could use to impeach a government witness. *Giglio v. United States,* 405 U.S. 150, 153–55, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972). A valid *Brady* complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The prosecution challenges the first element insisting that it did not know of the Barbara Lovett affidavit, which was produced in a civil forfeiture proceeding.[1]

"It is well accepted that a prosecutor's lack of knowledge does not render information unknown for *Brady* purposes." *United States v. Perdomo,* 929 F.2d 967 (3d Cir. 1991). The Third Circuit has held that the government has a duty to disclose all information "actually or constructively in its possession or accessible to it." *Id.* at 970. More recently, the Third Circuit in *United States v. Joseph,* 996 F.2d 36, 39 (3d Cir. 1993), defined constructive possession to mean that "although the prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence."

Courts nationwide have held that prosecutors have an affirmative duty to search files maintained by different branches of government "closely aligned with the prosecutor" in order to fulfil their *Brady* obligations. *United States v. Fairman,* 769 F.2d 386, 391 (7th Cir.1985). In *Fairman,* the Seventh Circuit held that a prosecutor's *Brady* obligation extended to a search for a police officer's ballistic report. In *United States v. Brooks,* 966 F.2d 1500 (D.C.Cir. 1992), the District of Columbia Court of Appeals held that a prosecutor's *Brady* obligation extended to a search for files in the possession of the local police department. In *United States v. Auten,* 632 F.2d 478, 481

cific enough to encompass the prior sworn affidavit of Barbara Lovett in the possession of the United States Attorney's Office.

(5th Cir.1980) the Fifth Circuit held that a prosecutor's *Brady* obligation extended to a search for FBI files and National Crime Information Center files. And, in *United States v. Deutsch,* 475 F.2d 55 (5th Cir.1973) the Fifth Circuit held that a prosecutor's *Brady* obligation extended to a search for a personnel file of a Post Office employee.

■ Certainly the civil division of the United States Attorney's Office is "closely aligned with the prosecutor." Therefore, it is entirely proper for this Court to require the prosecution to search related files in the civil division of its office in search of *Brady* material. Such a duty is not only reasonable and consistent with the intent of the Third Circuit in *Joseph,* but is necessary to fulfill the Supreme Court's mandate in *Brady.* By placing an affirmative duty on prosecution to search for *Brady* material, courts nationwide have recognized that "an inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure." *Brooks,* 966 F.2d at 1503.

■ Thus, when the government is pursuing both a civil and criminal prosecution against a defendant stemming from the same underlying activity, the government must search both the civil and criminal files in search of exculpatory material. "If disclosure were excused in instances where the prosecution has not sought information readily available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government." *Auten,* 632 F.2d at 481.

■ In this case, the affidavit of Barbara Lovett was readily available to the United States and could have been used by the defendant to impeach Barbara Lovett during the trial. Therefore, the Court holds that the failure of the government to disclose this affidavit to the defense during the trial constituted a *Brady* violation.

■ The Court's decision today does not violate the rule set forth in *Joseph* wherein the Third Circuit held that prosecution had

no duty to "search *unrelated files* to exclude the possibility, however remote, that they contain exculpatory information." 996 F.2d at 41. In the case at bar, we hold only that the prosecution must search *related files* to fulfil its *Brady* obligation.

## II. Motion for New Trial

■ In order to determine whether the defendant is entitled to a new trial based on the *Brady* violation the Court must determine whether the Barbara Lovett affidavit is "material" to the defense. The Supreme Court has explained that "implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (plurality opinion). A defendant is entitled to a new trial where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The Supreme Court held that this determination requires consideration of the totality of the circumstances. *Id.*

In *Bagley,* the Supreme Court ordered a new trial when evidence that two key government witnesses had been promised a reward for their testimony was excluded from the trial. The Court held that the possibility of a reward gave the witnesses "a direct, personal stake in the defendant's conviction." *Id.* at 683, 105 S.Ct. at 3384. As a result, the Court remanded the case for a determination whether it was probable that this information would change the outcome of the trial.[2]

In *Perdomo,* the Third Circuit vacated and remanded because the government withheld information of two prior criminal convictions and a psychiatric examination of a key witness. The Circuit Court held that "had the evidence been disclosed, the result of the proceeding might have been different ... Such information would have been critical in presenting the witness' mental state, de-

---

**2.** On remand, the Ninth Circuit held the information probably would have effected the outcome of the trial. 798 F.2d 1297 (9th Cir.1986).

meanor and behavior to the jury and in questioning the witnesses credibility." 929 F.2d at 972. In *Perdomo*, the Circuit Court had the benefit of the knowing that in a similar trial in which this evidence was disclosed the defendant was acquitted.

More recently, the Third Circuit refused to grant a motion for a new trial based on the government's withholding of *Brady* material. In *United States v. Pelullo*, 14 F.3d 881 (3d Cir.1994), the government failed to disclose an IRS memorandum which set forth facts inconsistent with the witness' testimony at trial. The Circuit Court found that because this IRS memorandum could have been used to impeach the witness, it falls within the framework of *Brady*. However, the Circuit Court held that this *Brady* violation did not warrant a new trial because there was not a reasonable probability that had the evidence been introduced at trial, the result of the proceeding would have been different. *Id.* The Court noted that the IRS memorandum merely contradicted certain dates and times offered by the witness during the trial. The Circuit Court held: "We do not believe that some inconsistencies in the dates would devastate the thrust of [the witness's] testimony on Pelullo's diversion of funds and, thus, would have changed the outcome of the proceeding. The evidence is merely cumulative or impeaching, and thus, not sufficient to warrant a new trial." *Id.* at 887 (citations omitted).

■ This Court finds the instant case analogous to *Pelullo*. If counsel for the defendant had been aware of the Barbara Lovett affidavit he would have been able to impeach her testimony using the affidavit. However, this evidence could not have been used to reveal that Barbara Lovett perjured herself during the trial. Barbara Lovett never testified at trial about the van. Thus, the best the defense could hope for is to impeach Barbara Lovett's testimony with the affidavit. However, the Court does "not believe that some inconsistencies [regarding the use of the van] would devastate the thrust of

[the witness's] testimony." *Perdomo*, 929 F.2d at 972. Merely impeaching Barbara Lovett's testimony with regard to the use of the van in drug sales would not cause the jury to reject entirely all of the testimony given by her.

The unimportance of this affidavit in the totality of the trial becomes clear when one realizes that Barbara Lovett was repeatedly impeached during the trial on a number of grounds. During cross-examination, the defense was able to impeach Barbara Lovett by showing that she used both methamphetamine and cocaine. Trial Transcript January 21, 1994 at 66–72, hereinafter "Tr. at ——." The defense was able to show she did drugs in front of her daughter. Tr. at 72. The defense was able to show that Barbara Lovett sold methamphetamine. Tr. at 75. The defense was able to show that although Barbara Lovett testified about the sale of drugs, Barbara Lovett was never present during drug sales involving the defendants. Tr. at 86. The defense was able to show Barbara Lovett testified incorrectly about dates in the drug ledger. Tr. at 165. More importantly, the defense was able to show that all of the information regarding the drug ledger was supplied to Barbara Lovett by Trey Lovett and Trey Lovett had often lied to Barbara Lovett about the sale of drugs. Tr. at 178.[3]

■ The defense was further able to raise doubt about Barbara Lovett's testimony by revealing that she had been promised a favorable sentencing recommendation from the government if her trial testimony was helpful in convicting Mr. Hankins and Mr. Hepburn. Tr. at 137. The defense was also able to cast doubt on the veracity of Barbara Lovett's testimony by pointing out that at the time she made her proffer several other members of this conspiracy had pled guilty and that Barbara Lovett was afraid of these people testifying against her. Tr. at 147. In addition, the defense was able to imply that she was angry with Mr. Hankins because Mr. Hankins had failed to offer Barbara Lovett any financial support while Trey Lovett was in jail. Tr. at 124.

---

3. During the trial, this Court held a hearing in order to determine if Trey Lovett was improperly feeding information to Barbara Lovett. The Court concluded that Trey Lovett was not feeding Barbara Lovett information and admonished

Barbara Lovett from discussing the case with her husband. The information supplied by Gail Nichols in her Third Circuit brief does not warrant this Court reconsidering its holding on this issue.

Thus, the newly discovered affidavit would merely have provided the defense with an additional ground on which to impeach Barbara Lovett. Such evidence is clearly cumulative.

Even assuming arguendo that this newly discovered affidavit was the proverbial "straw that broke the camels back" and caused the jury to reject entirely the testimony given by Barbara Lovett, there was still plenty of additional evidence in this case to support the guilty verdict against Mr. Hankins. The testimony of Barbara Lovett must be considered in the totality of the circumstances and all of the evidence introduced at trial. *Bagley,* 473 U.S. at 628, 105 S.Ct. at 3354. Barbara Lovett testified mainly about the overall drug distribution conspiracy and precious little specifically about Mr. Hankins.[4]

There was sufficient evidence wholly apart from Barbara Lovett's testimony to support the jury's verdict. Specifically, the jury heard testimony from Ellen O'Brien that Mr. Hankins was selling methamphetamine to her during the course of the conspiracy. In addition, the jury could connect Mr. Hankins to the entries in the drug ledger for a "WB" because of two tape recorded phone calls in which Mr. Hankins is identified as "Wild Bill" (G.E. 303) and "Wild Billy" (G.E. 328). In addition, Mr. Hankins admitted during his trial testimony that he was in the ledger under the name "Billy" because he had borrowed some money from Trey Lovett.[5] The jury also heard testimony from Kent Paulin, the FBI ledger expert, and John McCarty, which tended to show that the amounts next to those entries were typically distribution quantities (as opposed to for personal use).

Thus, when all of the evidence introduced at trial is considered, it is clear that the jury could totally disregard Barbara Lovett's testimony and still convict Mr. Hankins.

Therefore, the introduction of Barbara Lovett's affidavit would not have changed the outcome of the trial. And, the absence of this affidavit from the trial does not undermine the Court's confidence in the outcome of the trial. The affidavit of Barbara Lovett is merely cumulative and impeaching and not sufficient to warrant a new trial under the standard set forth in *Bagley* and *Pelullo.*

## CONCLUSION

For the foregoing reasons, defendant's motion for a new trial will be denied.

---

4. Barbara Lovett testified that Mr. Hankins was a member of the drug conspiracy. January 20, 1994 Trial Transcript at 6. She testified that Trey Lovett sold methamphetamine to Mr. Hankins. Tr. at 12. She testified that Mr. Hankins used methamphetamine. Tr. at 126. She testified that Mr. Hankins removed drug scales from her house. Tr. at 36. She testified that Mr. Hankins along with Trey Lovett and Freddie Cress burned plastic bags that formerly contained methamphetamine. Tr. at 132.

5. Because Mr. Hankins chose to testify, the jury was able to judge his credibility and evaluate the weight to be allowed to his testimony. They rejected it. Moreover, the Court gave serious consideration to a two level enhancement for obstruction of justice arising from Mr. Hankins' perjury under oath.