NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2026
_____

RICHARD ALLEN RATUSHNY,
Appellant

v.

SUPERINTENDENT HUNTINGDON SCI;
ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY NORTHAMPTON COUNTY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No.  5-14-cv-01324)
District Judge:  Honorable Cynthia M. Rufe

Submitted Under Third Circuit L.A.R. 34.1(a)
May 25, 2018

BEFORE:  MCKEE, SHWARTZ, and NYGAARD, *Circuit Judges*

(Filed June 26, 2018)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

NYGAARD, *Circuit Judge.*

I.

Before proceeding to the merits of this habeas appeal, we first must determine the scope of the District Court's certificate of appealability (COA).[1] Petitioner Richard Ratushny argues for an expansive reading of the certificate to encompass all of the issues he now raises on appeal. The Commonwealth, on the other hand, argues that the District Court limited its grant to a single issue: the Petitioner's *Brady* claim.[2] We may not consider issues on appeal that are not within the scope of the COA.[3] However, we may, in our discretion, expand the scope of the certificate beyond that announced by the District Court.[4]

The District Court's order denying habeas relief contains a general statement that "the Court issues a certificate of appealability." The Petitioner points to this sentence as evidence that the COA is expansive, encompassing all the claims he raised in the District

---

[1] *See* 28 U.S.C. § 2253(c)(2). We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We will dispense with the usual recitation of the factual background and procedural history of this matter, as both are well-known to the parties and comprehensively set forth in the District Court's memorandum and the U.S. Magistrate Judge's Report and Recommendation. For this same reason, we will also dispense with citations to the record. We need only relate that a Pennsylvania jury convicted the Petitioner of aggravated indecent assault, indecent assault, endangering the welfare of children, corruption of minors, and unlawful contact with a minor, crimes which stemmed from his sexual abuse of his girlfriend's daughters. He was sentenced to six to nineteen years in prison.
[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] 28 U.S.C. § 2253(c)(3); Third Circuit Local Appellate Rule 22.1(b); *Miller v. Dragovich*, 311 F.3d 574, 577 (3d Cir. 2002).
[4] *See* 3d Cir. LAR 22.1(b).

2

Court. But, the District Court's memorandum opinion explains otherwise. The Petitioner raised these habeas claims in the District Court: an ineffective assistance of counsel claim arising from trial counsel's alleged conflict of interest, an ineffective assistance of counsel claim stemming from trial counsel's failure to uncover a prior criminal conviction of his victim's mother, and a *Brady* violation claim. Ratushny's petition was referred to a U.S. Magistrate Judge, who recommended that relief be denied on all claims.

We read the COA as limited solely to the *Brady* violation. The structure of the District Court's opinion adopting the Magistrate Judge's Report and Recommendation is obvious, using Roman numerals and capital letters to demarcate its discussion and analysis. Relevant here, the District Court's opinion deals with the Petitioner's claims in separate, delineated sections: Part III, section "A." dealt with the Petitioner's ineffectiveness claims while Part III, section "B." dealt with the purported *Brady* violations. In Section A., the District Court specifically held that Ratushny was "not entitled to relief" on the ineffectiveness claims.[5] Compare this with section B, wherein the District Court specifically noted that "although the Court will deny relief, a certificate of appealability will issue." Because the sections of the District Court's opinion are clearly delineated with headings and subheadings, and because its grant of a COA is

---

[5] The Magistrate Judge's Report and Recommendation rolled both ineffective assistance of counsel claims into one discussion and analysis. The District Court did not identify the ineffectiveness claim focusing on the victim's mother's prior conviction for specific discussion, adopting the Magistrate Judge's recommendation without analysis. No COA was, therefore, given by the District Court on this claim, and despite the District Court's lack of specific discussion of this issue, the Petitioner has not sought one on appeal.

3

found only in Part III, Section B., it is just as clearly limited to the *Brady* claim. We, therefore, lack jurisdiction to review the ineffective assistance of counsel claim.[6]

## II.

We turn now to the claim on which the Petitioner was granted a COA, the alleged *Brady* violation.[7]  *Brady* teaches that a state bears an "affirmative duty to disclose [material] evidence favorable to a defendant."[8]  "Material" evidence is that in which there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[9]  The Supreme Court clarified that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that

---

[6] While we have the authority to expand the scope of the certificate of appealability sua sponte, we decline to do so here because reasonable jurists could not debate the District Court's conclusion that state court's application of the *Strickland* standard was unreasonable.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984);  28 U.S.C. §2254(d)(1).  The state court held a post-conviction relief hearing and determined that counsel had not violated the Commonwealth's conflict of interest prescriptions.  Further, the state court concluded that Ratushny's interests did not diverge from those of the subject of the conflict of interest, a witness.  The Pennsylvania Superior Court affirmed with a comprehensive discussion of this issue, holding that the situation was not likely to be a conflict of interest.  Given the wide deference afforded to the state court's determinations, we agree with the District Court that Ratushny should not be accorded relief on this claim and that reasonable jurists would not disagree.

[7] The Petitioner raises the second claim of ineffective assistance of counsel on appeal, but given our holding that the District Court's COA is limited to the *Brady* violation, we lack jurisdiction to review this claim as well and decline to use our discretionary authority to review it.

[8] *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady*, 373 U.S. 83).

[9] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

4

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[10]

The Petitioner asserts the Commonwealth violated *Brady* by failing to divulge the fact that the victim's mother—his former girlfriend and a witness for the prosecution—had a fraud conviction on her resume that could have been used for impeachment purposes. The Pennsylvania PCRA court determined that while this evidence fell under *Brady's* purview, there was no violation because there was no support on the record for a finding that the Commonwealth "possessed or controlled that information" and then either intentionally or inadvertently failed to disclose it to the defense. The state court based its conclusion on the fact that public record of the conviction was available to the defense and because there was no evidence that the prosecution had a record of this conviction and withheld it from the defense. We agree with the District Court that the criminal record was suppressed under *Brady*, as we have specifically explained.[11] The state courts reliance on the fact that the criminal records were publicly accessible is of no moment since public availability does not absolve a prosecutor from the responsibility to provide such records to the defense.[12] Nor is the prosecution relieved of its responsibilities under *Brady* where defense counsel fails to ask for such records. A

---

[10] *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).
[11] *See Wilson v. Beard,* 589 F.3d 651, 663 (3d Cir. 2009) (citing *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991)).
[12] *Id*. at 663-664.

prosecutor's duties are clear under *Brady* and an analysis of whether defense counsel could have or should have discovered the records is "beside the point."[13]

But, the fact *Brady* material was suppressed does not necessarily mean the state court unreasonably applied federal law. To reiterate, the failure to disclose *Brady* evidence only mandates a new trial if such evidence is "material," that is, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[14] Here, the state courts made the determination that the reliability and credibility of the victim's mother were not "critical or essential" to the conviction. Several other witnesses, including another sister of the victim, testified to the fact that she had misrepresented herself on numerous occasions. Furthermore, various friends had testified that the victim confided in them about the abuse. Based on this, the state court determined that the *Brady* material was not favorable enough to overcome other evidence and affect the verdict, and, therefore, "did not undermine the fairness of the proceeding." This conclusion is consistent with our standard for determining whether *Brady* evidence was material. Hence, we agree with the District Court that the state courts did not unreasonably apply federal law in concluding that the *Brady* evidence was not material, especially given the corroborating testimony of the victim and others. The victim's mother was thoroughly cross-examined, during which Petitioner's counsel elicited from her information about her long history of drug use (including her use of illegal drugs with her minor daughter), her difficult

---

[13] *Dennis v. Sec'y, Pa. Dept. Corrections*, 834 F.3d 263, 291 (3d Cir. 2016).
[14] *Bagley*, 473 U.S. at 682.

6

relationship with her daughter, and her belief that she was competing with her daughter for Petitioner's attention and affections. Cross-examination also revealed her two-year delay in reporting the sexual abuse, as well as her prior threats to report the Petitioner to the police, and her repeated threats to report him to the authorities in order to exact some revenge on him for leaving her. Defense counsel's closing argument specifically focused on the victim's mother's lack of credibility and veracity.

Given this, the fact that the victim's mother had been convicted of a fraud offense was not significant. We have stated that "[t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state."[15] The *Brady* evidence that she had been convicted of fraud does nothing to "put the whole case in a different light as to undermine [] confidence in the verdict."[16]

Therefore, this *Brady* evidence was not material, and, for the foregoing reasons, we will affirm.

---

[15] *Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) (citing *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010)).
[16] *Hollman v. Wilson*, 158 F.3d 177, 182 (3d Cir. 1998).