**UNITED STATES of America,**

v.

**John J. RIGAS and Timothy Rigas, Defendants.**

No. 4:05–cr–402.

United States District Court, M.D. Pennsylvania.

April 20, 2011.

---

**410**

George J. Rocktashel, U.S. Attorney's Office, Williamsport, PA, Lorna N. Graham, U.S. Attorney's Office, Scranton, PA, for United States of America.

*MEMORANDUM AND ORDER*

JOHN E. JONES III, District Judge.

Before the Court is the Motion to Compel the Production of Government Interview Notes ("the Motion")(Doc. 67) filed by Defendants John J. Rigas and Timothy Rigas (collectively "the Defendants") on April 15, 2008. This matter had previously been stayed pending an interlocutory appeal before the United States Court of Appeals for the Third Circuit. Following the Third Circuit's decision in that appeal, the Court received a supplemental brief on the Motion from the Defendants. (Doc. 125). Accordingly, the matter is fully ripe for our review.

## I. BACKGROUND

On October 6, 2005, a grand jury sitting in the Middle District of Pennsylvania returned an indictment against the Defendants charging each of them with a single count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and three counts of tax evasion in violation of 26 U.S.C. § 7201. Thereafter, the grand jury returned a superseding indictment (Doc. 94), charging each of the Defendants with one count of conspiracy to defraud in violation of 18 U.S.C. § 371 and four counts of tax evasion in violation of 26 U.S.C. § 7201. In short, the Defendants, the former chief officers of Adelphia Communications Corporation ("Adelphia"), are alleged to have participated in a conspiracy to divert funds from Adelphia, their family business, without paying income taxes. The transactions that form the basis of the tax evasion charges generally involve purchases of Adelphia securities by the Defendants between 1998 and 2000. Some of the purchases were made with funds jointly borrowed by Adelphia entities and Rigas entities pursuant to co-borrowing agreements. In addition, the Defendants are alleged to have improperly diverted funds from Adelphia's cash management system.

In July 2004, the Rigases were found guilty of conspiracy and multiple counts of securities and bank fraud after an eighteen week jury trial in the Southern District of New York. The New York prosecution came on the heels of Adelphia's collapse in 2002 after auditors reported that off-books companies controlled by the Rigases had accumulated nearly $2.5 billion in undis-

closed bank loan debt, which was hidden through allegedly fraudulent accounting practices. Certain evidence collected in anticipation of the New York prosecution forms the basis for at least part of the relief requested in the instant Motion.

## II. MATERIAL SOUGHT BY DEFENDANTS

Within the instant pretrial Motion, the Defendants seek an order requiring the Government to produce the following:

(1) Any relevant notes and memoranda regarding an interview of Carl Rothenberger ("Rothenberger"), Adelphia's outside general counsel, by the United States Attorney's Office for the Southern District of New York or any other arm of the Government, including, but not limited to, the SEC;

(2) Materials reflecting other interviews that the Government conducted with attorneys from the law firm of Buchanan Ingersoll or bank representatives; and

(3) Materials from James Brown's ("Brown") interviews with the SEC.

We will review each of the requests in turn, commencing with that as to Rothenberger.

### A. Rothenberger

Rothenberger, a partner at Buchanan Ingersoll, formerly served as Adelphia's lead outside securities and corporate governance lawyer. He is alleged to have played a key role in Adelphia's board meetings and corporate governance issues, including the approval and disclosure of the co-borrowing agreements and securities purchases at issue in this case. From 1996 to 2001, Rothenberger spent between 60 and 90 per cent of his time working on Adelphia matters and attended all Adelphia board meetings during this period.

Shortly before the Defendants' trial in New York began, Rothenberger was interviewed on February 20 and 21, 2004, by Christopher Clark, an Assistant United States Attorney in the Southern District of New York and Thomas Feeney, a United States Postal inspector. Feeney took notes of the interview.[1] In September of 2007, well after the Defendants' New York trial had concluded, the Government informed the Defendants that it had taken notes of the Rothenberger interview, however it refused to produce Feeney's interview notes.

Rothenberger was also interviewed by the SEC in December 2004 concerning the SEC's investigation of Adelphia matters. This interview was transcribed, however the Government has not produced the transcript of this interview to the Defendants.

### B. Bank Representatives and Buchanan Ingersoll Attorneys

Defendants also move the Court to compel the Government produce "materials reflecting other interviews" that the Government conducted with any Buchanan Ingersoll attorneys or bank representatives. (Doc. 67, p. 1). The Defendants assert that "the banks that were lenders under the co-borrowing facilities should be able to testify that the funds drawn down by the Rigases were legitimate loans and that such loans could properly be used by Rigas affiliates for purchases of Adelphia securities." (Doc. 74, p. 8).

### C. James Brown

James Brown, a Adelphia's former vice president of finance, was the lead Government witness against the Rigases in the

---

1. Rothenberger was ultimately not called as a witness at the New York criminal trial.

New York trial. Defendants assert that, after the New York criminal trial concluded, he gave differing, potentially exculpatory testimony in an SEC proceeding regarding the Rigases and their ability to repay their co-borrowing debt, notwithstanding his testimony in the criminal case that the Rigases were "under water." Thus the Defendant seek the notes of any interviews conducted with Brown by the SEC or the United States Attorney's office in preparation of his SEC testimony.

## III. ANALYSIS

The Defendants argue that the Government must be compelled to turn over the above-described information because its potentially exculpatory nature implicates the Government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government argues that the Defendants' Motion should be denied, arguing that an opinion of United States District Judge Leonard B. Sand of the Southern District of New York precludes the instant Motion on collateral estoppel grounds. Alternatively, the Government makes several additional arguments opposing the Motion. First, the Government asserts that Rothenberger will not be called as a witness at the Defendants' trial, thus it has no obligation to produce the notes of his interview. Second, the Government asserts that the Defendants knew of Rothenberger's existence (as well as the existence of other Buchanan lawyers), his role at Adelphia and the facts upon which he could testify, thus the Government has fulfilled its *Brady* obligations. Third, the Government asserts that neither the Unit-

ed States Attorney for the Middle District of Pennsylvania nor agents with the Criminal Investigative Division of the Internal Revenue Service are in possession of any materials resulting from interviews of bank lenders. Finally, the Government asserts that documents maintained by the SEC are not within its control, thus it is under no duty to learn of the information possessed by the SEC nor can it be required to produce SEC documents. Once again, we shall dispose of each of these areas in turn.

### A. Judge Sand's Decision

On January 15, 2008, Judge Sand issued a Memorandum and Order, in the context of the Southern District of New York criminal matter, denying the Rigases' request for the Rothenberger interview notes as well as interview notes of other witnesses who gave exculpatory testimony in the subsequent civil case.[2] In that decision, Judge Sand concluded that the Government had no statutory obligation to disclose the notes of Rothenberger's interview because he was never called to testify.[3] Judge Sand also concluded that the Government did not violate its *Brady* obligation, reasoning that the Defendants knew of Rothenberger's existence, his role at Adelphia, and the facts upon which he could testify. Thus, Judge Sand concluded that the Government did not suppress any exculpatory evidence known only to it. Judge Sand applied this latter rationale to the other witnesses identified by the Rigases in that motion.

Judge Sand also denied the Rigases' request to obtain interview notes conduct-

---

**2.** As noted previously, Judge Sand's decision was rendered post-trial.

**3.** 18 U.S.C. § 3500 provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by

a Government witness or prospective Government witness (other than the defendant) shall be the subject of a subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

ed by the SEC in its civil investigation of Adelphia, concluding that these notes were not within the possession, custody or control of the United States Attorney's Office.

### B. Collateral Estoppel

■ As noted above, the Government argues that Judge Sand's opinion in the Southern District of New York precludes us from considering the Defendants' instant Motion to Compel. We disagree. As explicitly stated by the Third Circuit, "there has been a strong, unelaborated assumption that the doctrine of collateral estoppel cannot be invoked in criminal cases against the defendant. Judges have stressed in dicta that unlike in civil cases, the collateral estoppel principle should not be applied to both parties in criminal cases." *United States v. Pelullo*, 14 F.3d 881, 892 (3d Cir.1994). Moreover and as noted, the instant Motion to Compel arises in a completely different procedural posture (pre-trial) than the one filed in the Southern District of New York (post-trial). Accordingly, we do not find that Judge Sand's ruling precludes our independent determination of the instant Motion.

### C. Government's Alternate Grounds Opposing Motion to Compel

#### 1. No Jencks Act Statutory Obligation

■ The Government asserts that "in the instant case [it] will not call Carl Rothenberger as a witness at trial. Consequently, the Government has no statutory obligation to turn over interview notes regarding Mr. Rothenberger," citing 18 U.S.C. § 3500 (the "Jencks Act"). To be sure, it is logical that this argument was availing before Judge Sand, since after all, the trial was concluded when his opinion was rendered and quite evidently Rothenberger had not been called as a witness. Here, however, we are in a *pre-trial* posture, thus while the Government is technically correct that it does not have a statutory obligation to turn over the Rothenberger interview notes if it does not intend to call him as a witness, the argument is a legal *non-sequitur* based on the posture of the case. In effect, the Government is using the Jencks Act to escape its *Brady* obligation. But the Government cannot conflate Jencks and *Brady* to eviscerate the latter.

#### 2. Rigases Aware of Rothenberger's Identity

■ Next, the Government argues that it does not have a *Brady* obligation to release the Rothenberger interview notes to the Rigases because the Rigases obviously know of Rothenberger's existence, his role at Adelphia, and the facts upon which he could testify. The Rigases do not contest their familiarity with Rothenberger, but what the Rigases themselves may know about Rothenberger certainly does not insulate the Government from a *Brady* disclosure obligation.

■ *Brady* establishes an affirmative duty of the government to produce any evidence favorable to the defendant that is material to either guilt or punishment. *United States v. Bagley*, 473 U.S. 667, 674–75, 105 S.Ct. 3375, 87 L.Ed.2d 481. Both exculpatory information and evidence that can be used to impeach the prosecution's witnesses are considered "favorable" under *Brady* and must be disclosed by the government. *Id.* at 676–77, 105 S.Ct. 3375. Further, prosecutors should resolve "doubtful questions in favor of disclosure," "because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete." *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *United States v. Higgs*, the Third Circuit announced that district courts have gener-

al discretionary authority to order the pre-trial disclosure of *Brady* material "to ensure the effective administration of the criminal justice system." 713 F.2d 39, 44 n. 6 (3d Cir.1983). *See also United States v. Starusko,* 729 F.2d 256 (3d Cir.1984).

The Defendants argue that the notes of Rothenberger's interview likely contain exculpatory information demonstrating that the transactions that form the basis of the tax evasion charges were legitimate. The Defendants further assert that, despite numerous attempts to do so, Rothenberger refuses to meet with their attorneys and therefore the information in the notes of his interview is entirely unavailable to them.

Simply put, we do not accept the Government's assertion that the Defendants have equal access to Rothenberger, which then eliminates any potential *Brady* obligation. Further, in view of Rothenberger's significant role in Adelphia and in the questioned transactions, we find that the notes of his interviews could very well contain exculpatory information that may be of use to the Rigases at trial. Thus, in the interests of caution and to ensure that the Defendants are given their appropriate due process in this federal criminal trial, we shall order the Government to release any and all notes of interviews it conducted with Rothenberger.

### 3. Items Not in the Custody and Control of the Government

 The Government also argues that it should not be required to produce the notes of interviews with Rothenberger, Brown, bank representatives and other Buchanan Ingersoll attorneys because those notes are not in the possession of the United States Attorney's Office for the Middle District of Pennsylvania or the Criminal Investigative Division of the Internal Revenue Service. This argument

fails to recognize that the Third Circuit has imposed an obligation on prosecutors to "produce certain evidence actually or constructively in its possession or accessible to it." *United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir.1991). In view of this liberal standard, we find that the interview notes of Rothenberger taken by Postal Inspector Feeney and AUSA Clark in the Southern District of New York matter clearly fall into the category of documents "accessible" to the Government. Thus, we shall order those interview notes be released to the Rigases.

 With respect to the interview from Rothenberger's · interview with the SEC, we find that the Government has constructive possession of these notes and they also must be released to the Rigases. In *United States v. Risha,* the Third Circuit set forth the following test to determine whether the Government should be constructive knowledge of cross-jurisdictional investigations: (1) whether the party with knowledge of the information is acting on the Government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence. 445 F.3d 298, 304 (3d Cir. 2006). There can be little doubt that the SEC's investigation into the Rigases was jointly undertaken with the United States Attorney's Office of the Southern District of New York, particularly in view of the fact that the Southern District's criminal complaint and the SEC's complaint against the Rigases were filed in successive days in 2002. Additionally, the Rigases are seeking limited information from the SEC and are not asking that entity to open its entire file to them. Instead, they seek notes from an interview with a particular

individual. We cannot think of any reason why this material would not be readily accessible to the Government thus available for disclosure. Accordingly, we shall further order the Government to release Rothenberger's interview notes to the Rigases.

### D. James Brown

■ The Defendants also seek the SEC's interview notes with James Brown, the lead Government witness at the Rigases' New York criminal trial. The Rigases contend that Brown gave exculpatory testimony in the SEC proceedings, and thus posit that notes of any interviews conducted with Brown in preparation of his testimony might also contain exculpatory information. As we concluded with Rothenberger, we find that discovery in the pretrial phase must be liberally given to ensure that the Rigases are afforded their due process rights. Accordingly, we shall order that the Government disclose the Brown's interview notes with the SEC to the Defendants.

### E. Buchanan Ingersoll Attorneys and/or Bank Representatives

Based upon the information before the Court on the instant Motion and briefs, we cannot determine whether the Rigases are entitled to interview notes or other materials pertaining to other Buchanan Ingersoll attorneys or bank representatives, or whether this information exists in the first place. Accordingly, we shall task the Government to prepare a list disclosing whether any of this information exists.[4] The list shall include the names and titles of the witnesses, what type of material is in the Government's possession (interview notes, interview transcripts, other documents), and the date the information was collected. We shall limit the Government's search for this information to the United States Attorney's Office for this District and the Southern District of New York and the SEC. The Government shall file this list and serve the same upon the Defendants. The Defendants shall then inform the Court, by way of a supplemental filing, if it seeks any of the information contained on the list and, if so, the basis for an Order compelling disclosure.[5]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Defendants' Motion to Compel the Production of Government Interview Notes (Doc. 67) is **GRANTED** to the following extent:

 a. Within forty-five (45) days of the date of this Order, the Government

---

4. While preparing this list, which in effect is a privilege log, the Government should be mindful of the letter and spirit of our rulings in this Memorandum and Order. The Court would be most appreciative if the Government disclosed information to the Defendants that it believes the Court would in any event likely order it to disclose in the future, thus saving the Court and the parties further time and resources.

5. Counsel are as familiar as the Court with the Memorandum for Department Prosecutors ("Ogden Memo") promulgated by the Attorney General of the United States on January 4, 2010. The Ogden Memo, issued largely in response to the disastrous prosecution of the late Senator Ted Stevens, provides substantial guidance to prosecutors and instructs them to move beyond strict adherence to the basic tenets of *Brady* by engaging in liberal discovery. We will not endeavor to further characterize the Ogden Memo beyond stating that it presents a welcome and healthy approach to criminal discovery. That said, we are concerned that the various positions taken by the Government in the case *sub judice* appear to violate the spirit, if not the letter, of the Ogden Memo. We will not allow this case to devolve into one that sacrifices the Defendants' due process rights based on an overly restrictive interpretation of the Government's discovery obligations.

shall provide the Defendants with the notes of Carl Rothenberger's interview with the United States Attorney's Office for the Southern District of New York and Postal Inspector and the SEC and the notes from James Brown's interview with the SEC.

2. Within forty-five (45) days of the date of this Order, the Government shall file a list in the format of a privilege log on the docket cataloging any interview notes or other materials of other Buchanan Ingersoll attorneys or bank representatives as conducted by the United States Attorney's Office of this District of the Southern District of New York or the SEC.

3. Within twenty (20) days of the filing of the Government's list, the Defendants shall file a submission indicating whether they seek an order compelling disclosure of any of the items identified by the Government. Defendants' submission shall state the basis for an order compelling such disclosure.

4. The Government may oppose the Defendants' request within twenty (20) days of the filing of Defendants' submission.